CASE 85—ACTION BY JOHN B. HURST AGAINST W. R. BAILEY, CON-
TESTING AN ELECTION.—JUNE 12.

# Bailey v. Hurst.

APPEAL FROM HARLAN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

ELECTIONS—DRINKING BY ELECTION OFFICERS—CALLING PARTICULAR
PERSONS TO VOTE—OPENING OF BALLOT BOX—IRREGULARITIES NOT
AFFECTING RESULT—RECOUNTING OF BALLOTS—CONCLUSIVENESS
OF OFFICERS' CERTIFICATE—BALLOTS TAMPERED WITH.

Held:   1. The vote of a precinct will not be thrown out because the
election officers drank some liquor during election day, the quan-
tity drunk not being sufficient to affect them in the discharge
of their duties.

2. The calling of particular persons from the crowd to vote, in or-
der to save time, was not a substantial irregularity; it not ap-
pearing that any one did not vote or left the grounds on account
of delay.

3. The direction of the statute that the ballot box must not be opened
must give way to the more essential direction that the election
must be held; and therefore, where the only pen of the clerk
fell into the box by accident, the opening of the box to take out
the pen, in order that the election might proceed, was not im-
proper, none of the ballots being touched.

4. Irregularities in the mode of conducting the mere details of
the election which do not tend to affect the result will be disre-
garded.

5. In recounting the ballots upon the application of the contestant,
the recount should be confined to the grounds of contest alleged.

6. The certificate of the officers of election is *prima facie* correct,
and the presumption of the proper discharge of official duty in
counting the votes is not overthrown by the ballots, if, when
they are produced, it appears that they have been tampered
with.

N. B. HAYS, ATTORNEY FOR APPELLANT.

This is an election contest for the office of county judge of
Harlan county at the November election, 1901.

The certificate of election was given to the appellant, who,

by the official count received 701 votes, while appellee, Hurst, received 546 votes, giving Bailey, the appellant, a majority of 155 votes. But by a recount ordered by the lower court, appellee, Hurst received 680 votes, while appellant received only 562 votes, giving a majority to appellee.

On the merits of the case we contend:

1. That the ballots can not be recounted for any purposé not specifically pointed out in the alleged grounds of contest—nor can a vote be taken from either party unless it is alleged as a ground of contest that said vote or votes were wrongfully counted for such party.

2. That the grounds of contest alleged are mere irregularities, that did not affect the result of the election and should be disregarded.

3. That where it appears from the evidence and the ballots themselves, that they had been tampered with before the recount was made, such reco.int can not overthrow the original official count and returns made by the officers of the election.

## AUTHORITIES CITED. .

Stamper v. Higgins, 38 Mun., 222; Merit v. Hinton, 55 Ark., 12; McCreary on Elections, 4 Ed., sec. 475; Paine on Elections, sec. 787; Coghlan v. Beard, 65 Cal., 58; A. & E. Ency., vol. 17, 2 ed., p. 717; State v. Noble, 118 Ind., 350; Anderson v. Likens, 20 R., 1001; Banks v. Sergent, 20 R., 1024; Constitution, sec. 151; Kentucky Statutes, 1586-87; Struss v. Johnson, 100 Ky., 319; Cowan v. Prowes, 93 Ky., 156; Wilson v. Hines, 99 Ky., 221; Lunceford v. Culton, 15 R., 504; Southall v. Griffith, 100 Ky., 91.

JAS. ANDREW SCOTT & W. C. MARSHALL, for appellant.

1. We insist that Hurst's alleged petition of nomination did not comply with the statute, and the lower court erred in compelling the county clerk to place appellee's name under the "log cabin," and in this way hundreds of voters were deceived into the belief that they were voting for the nominee of their party.

2. We contend that the court, in appointing special commissioners to recount the vote, and failing in that order to specify and direct that in inspecting and recounting said vote, and in passing their opinion upon the regularity and legality of the same, they should only take into consideration, and inspect with reference to the grounds of contest set out in the pleadings in this case with reference to the respective precincts.

3. The order appointing said commissioners, the report made

by them, and the confirmation thereof by the court, were and are all null and void. The judicial investigation for which the ballots are preserved under the election law of 1900, can not be delegated; and the report of the commissioners of the recount, necessarily shows that the alleged facts set out, were arrived at by the exercise by them of judicial power, as we maintain, unauthorized.

### AUTHORITIES CITED.

McCreary on Elections, secs. 702, 705, 87, 298; State, *ex rel.* O'Malley v. Lesureur, 103 Mo. —, 22 S. W. Rep., 481; 17 Am. & Eng. Ency. of Law, 717; 39 Wis., 390; 119 Ind., 536; 4 Green, Iowa 104 and 120; 66 N. C., 309; 10 Am. St. Rep., 143; Chase's Blackstone, 833' and 841; Kentucky Statutes, Art. 2, chap. 2, sec. 395; Also secs. 1453 and 1587; 81 Ky., 254; 22 R., 692, 19 R. R., 977; 20 R., 1914 and 1001; 17 R., 1149.

W. S. PRYOR, MONTGOMERY & LEE, AND J. G. & J. S. FORESTER, FOR APPELLEE.

According to the certified returns and the fraudulent and illegal manner in which the votes were counted, Bailey, the appellant, was elected by a majority of 155 votes. Hurst contested, setting forth various grounds of contest and also asked a recount of the ballots insisting that the returns on their face, showed that he had been elected; Bailey also insisted on a recount.

, But when the recount is had, then, for the first time we hear of mutilated and changed ballots and an effort is made to show that the windows of the clerk's office could not be fastened down, and persons might have gone in and perpetrated this great wrong.

Skidmore, the county clerk, the man who had been fighting Hurst, was there until January, when the deputy under him succeeded him.

Upon hearing the contest, this case was referred to commissioners to count the vote, the appellant selecting H. C. Rice, an uncle of appellee, and the appellee selecting A. B. Cornett. They were to count the vote in the presence of the attorneys for each party, and they made their reports showing that appellee had been elected by 118 votes.

It is complained that by the appointment of these commissioners, they were invested with judicial power, such as the judge alone could exercise. It was not expected or necessary for the judge to sit quietly down and count all these ballots.

It was done in his presence, or at least when they made their
report he had the ballots and boxes all before him.

We insist that the court did not err in overruling the ex-
ceptions to the commissioners' report, that the case was fairly
heard and tried in the manner provided by law, and that no
error has been committed to the prejudice of the substantial
rights of appellant.

OPINION OF THE COURT BY JUDGE HOBSON—REVERSING.

Appellant, W. R. Bailey, and appellee, John B. Hurst,
were candidates for the office of county judge of Harlan
county at the November election, 1901; Hurst's name being
printed under the Republican device on the ballot, as the
nominee of that party, and Bailey's name being printed un-
der an independent device. By the official count, Bailey
received 701 votes, and Hurst 546. Hurst filed this action,
contesting Bailey's election. The grounds of contest, as
alleged in his petition, are as follows: (1) In the precinct
where Bailey lived, known as "No. 3," it was alleged that
the officers of election were all drunk, and committed out-
rageous acts of fraud and corruption,—electioneering with
the voters; leaving the voting place at noon; allowing votes
to be taken while some were absent; selecting persons
from the crowd in waiting to vote, and holding the poll
open until after 4 o'clock; not counting for contestant a
large number of votes that were cast for him; and changing
the result of the vote after it had been announced. (2) It
was alleged that in precinct No. 4 the officers allowed peo-
ple to congregate within a few feet of the voting place,
close enough to hear what was said by illerate voters, and
intimidate them. (3) In two other precincts (Nos. 1 and
A1), it was alleged that the inspector kept tab of the votes
called out, and the judges took no part in the count, ex-
cept to string the ballots. In these two precincts, and in
every other precinct in the county, it was charged that in

counting the ballots the election officers failed and refused
to count for contestant a great number of ballots where
the voter had placed his stencil in the circle under the log
cabin, for the alleged reason that the voter did not also
place the stencil in the small square opposite contestant's
name, although the voter had not attempted to vote for any
other person for county judge. He prayed a recount of
the ballots. The defendant, Bailey, filed an answer, which
was made a counterclaim, denying the allegations of the
petition, and pleading affirmatively that Hurst was not
the nominee of the Republican party, and his name was
improperly placed on the ballot under that device, but for
which he would not have received 100 votes in the county,
and that, at all the precincts, votes which were intended
for the contestee were counted for contestant. He also
charged that in one precinct (No. 6), where Hurst received
75 majority, the polls were kept open until 5 o'clock, votes
were openly bought for Hurst, and the ballots were ex-
posed so that it could be known that the voter had voted
as he promised. Other irregularities were charged in this
precinct not unlike those charged by contestant as to dis-
trict No. 3. He alleged that in four precincts, especially,
many ballots were counted for Hurst which were not legal-
ly cast for him, and also prayed a recount of the ballots.
Proof was taken by the parties, and, when the cause came
on to be heard, the court appointed two commissioners to
open the ballot boxes and recount the ballots, over the ob-
jections of Bailey. The commissioners performed their
duty as directed in the presence of the counsel of the par-
ties. They agreed on the count of the ballots, but they
did not agree on the report to be made to the court; one
of them being of the opinion that the ballots had been tam-
pered with since the official count, and that for this rea-

Bailey v. Hurst.

son the recount made by them amounted to nothing. By the recount, Bailey received 562 votes, and Hurst 680 votes. The circuit judge refused to allow the commissioner who was of opinion that the ballots had been tampered with to file the report which he tendered, and ordered him to sign the other report. Bailey then filed exceptions to the report, charging the mutilation of the ballots, and asking time to take proof by the election officers and others showing the facts. He filed their affidavits with his exceptions, and had them present in the court house to testify; but the circuit judge overruled the exception, and, without hearing the evidence offered, adjudged Hurst the office. From this judgment, Bailey appeals.

The charges of fraud and corruption on the part of the election officers in precinct No. 3 are not sustained. None of the officers were drunk, although it is shown that the clerk drank some whisky during the day, and one of the judges also took a drink because he was suffering from bowel trouble. The officers were not affected in the discharge of their duties by the whisky they drank, and there is no evidence of fraud or corruption on their part. It is true, persons were called from the crowd to vote. This was done to save time. As they had only one booth, the clerk would prepare the ballot for some one in the crowd waiting, selecting as well as he could the nearest man, while the voter was in the booth, and then call the man so selected in to get the ballot as soon as the booth was empty. It was a very large and cumbersome ballot, extremely difficult to vote; and, from having only one booth, the voters were necessarily delayed, and there was danger that all could not vote by 4 o'clock. It is not shown that any one did not vote or left the grounds on account of de-

iay, and, on the contrary, it is shown that all but two had voted at half past 3 o'clock. At the noon recess nothing improper occurred, so far as is shown by the evidence; and, while there is proof that the polls were kept open after 4 o'clock, we think it is outweighed by the proof that the polls were closed at the proper time.

The ballot was a very large one, and covered the entire table. The ballot box was set on a chair by the side of the table. During the forenoon the clerk, in picking up a ballot off the table, knocked off of it his pen that he was writing with, and it rolled over on the ballot box, and fell through the slit into the box. They then sent over to a neighbor's and borrowed a pen. That afternoon precisely the same thing occurred again, the second pen falling into the box. They could not get another pen within several miles, and before they could do this the time for closing the polls would come; so the officers unlocked the box and took out the two pens—not touching a single ballot—and continued the voting. This did not vitiate the vote. The direction of the statute that the ballot box must not be opened must give way to the other and more essential direction that the election must be held; and as they could not go on with the election without the pen, and the box was opened in the presence of all the officers, and by common consent, and nothing disturbed in the box. no substantial harm was done.

The complaint made as to precinct No. 4 is not sustained by the evidence, nor is the complaint made by appellant as to precinct No. 6. It is true, there were some irregularities in all of these precincts, as there nearly always are in an election in some voting places. But none of these things affected the result. The rule as to these irregularities is thus well stated in McCrary, Elect., section 228:

"Those provisions of a statute which affect the time and place of the election and the legal qualifications of the electors are generally of the substance of the election, while those touching the recording and return of the legal votes received, and the mode and manner of conducting the mere details of the election, are directory. The principle is that irregularities which do not tend to affect results are not to defeat the will of the majority. The will of the majority is to be respected, even when irregularly expressed. The officers of election may be liable to punishment for a violation of the directory provisions of a statute, yet the people are not to suffer on account of the default of their agents."

The difference between the official count and the recount by the precincts is as follows:

|  | BAILEY | | HURST. | |
| --- | --- | --- | --- | --- |
|  | Official. | Recount. | Official. | Recount. |
| Number 1 | 115 | 216 | 66 | 69 |
| " 9 | 21. | 32 | 60 | 84 |
| " A1 | 48 | 48 | 83 | 87 |
| " 2 | 116 | 117 | 52 | 54 |
| " 3 | 110 | 2 | 5 | 12 |
| " 4 | 124 | 86 | 36 | 57 |
| " 5 | 11 | 10 | 30 | 30 |
| " 6 | 24 | 24 | 89 | 101 |
| " 7 | 38 | 37 | 44 | 88 |
| " 8 | 47 | 43 | 46 | 58 |
| " 9 | 28 | 28 | 8 | 12 |
| " 10 | 19 | 19 | 28 | 28 |
|  | 701 | 562 | 546 | 680 |

It will thus be seen that the essential difference between the two counts was in precincts 3 and 4. In precinct 3, which was Bailey's home precinct, he received by the official count 110 votes, and by the recount 2, while Hurst received in this precinct by the official count 5 votes, and by the recount 12. In precinct 4 Bailey received by the official

count 124 votes, and by the recount 86, while Hurst received by the official count 36 votes, and by the recount 57. The proof shows that Bailey was an old soldier and crippled, and that his neighbors were pretty unanimously for him. The change in the result in precinct 3 was brought about by the fact that on the recount all the ballots that were cast for Bailey in that precinct were thrown out but 2, on account of the fact that all the ballots but 2, when recounted, were marked in some way so as to make them illegal. If there was no evidence in the record, it would be incredible that, in any precinct where everybody was substantially for a candidate, the ballots should all be spoiled in this way; and, from our inspection of these ballots, we have no doubt that they were mutilated after they left the hands of the election officers. The additional marks are made in a different ink. They are not made with a stencil. The commissioner reports that the seals were broken when they opened the ballots, and it appears from the testimony of the election officers that they counted the ballots, as they thought, correctly, without dispute or difference of judgment. The ballot boxes have been brought before us. They are made of planks nailed together, and locked with a staple, which is not clinched. They could be opened without any trouble, and were simply kept in the clerk's office from the time of the election until the recount. There was abundant opportunity for tampering with them. The same thing is true in precinct No. 4, although the fraud there is not so patent as in the case of precinct No. 3. The gain by Hurst in these two precincts is in some measure due to the fact, as we are satisfied from an examination of the ballots, that some voters did not vote in the race for county judge, and part of these ballots have since been marked for Hurst. If we give Bailey the

vote counted for him by the election officers in these two
precincts, he is elected, although Hurst is conceded all the
votes given him on the recount.   It will be observed that
Hurst, in his petition, did not charge that votes had been
counted for Bailey which ought to have been counted for
him, except in precinct No. 3, where it was charged that
votes that were cast for Hurst had been counted for
Bailey, and in this precinct Hurst only gained 7 votes on the
recount.   The object of requiring the grounds of contest
stated is to apprise the opposite party of what he is ex-
pected to meet.   The proof should not only be confined to
what is alleged, but, in recounting the ballots, the recount
should be confined to the grounds of contest alleged in the
petition.   The certificate of the officers of election is *prima
facie* correct, and the presumption of the proper discharge
of official duty in counting the votes is not overthrown
by the ballots, if, when they are produced, it appears that
they have been tampered with.   The rule on this subject
is thus well stated in McCrary on Elections:   "Where, as
is the case in several of the States, the statute provides a
mode of preserving the identical ballots cast at an election,
for the purpose of being used as evidence in case of contest,
such statute, and particularly those provisions which pro-
vide for the safe-keeping of such ballots, must be followed
with great care.   The danger that the ballots may be tam-
pered with after the count is made known, especially if
the vote is very close, is so great that no opportunity for
such tampering can be permitted.   Such ballots, in order to
be received in evidence, must have remained in the custody
of the proper officers of the law from the time of the orig-
inal official count until they are produced before the proper
court or officer; and if it appear that they have been han-
dled by unauthorized persons, or that they have been left

in an exposed and improper place, they can not be offered to overcome the official count." Section 471. "Although the general rule is that the ballots themselves are the best evidence of the number of votes cast, and for whom cast, yet this rule can have no application to a case where the ballots have been tampered with after they were deposited in the ballot box. In such a case the value of the ballots as evidence is almost totally destroyed, and the returns made by the officers of election presiding at the polls may become better evidence than the ballots." Section 474. From an inspection of the ballots themselves, we are satisfied that this rule should be applied here, and that the certificate of the election officers is the best evidence as to how the votes were cast.

Judgment reversed, with directions to dismiss the petition.

Whole court sitting.