## Howard v. Unthank.

(Decided March 25, 1930.)

580

B. M. LEE for appellant.

J. B. SNYDER and H. H. FUSON for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

Appellant and appellee were candidates for election as member of the county board of education for educational division No. 4 in Harlan counyt, at the November election, 1929. On the face of the returns, as made by the election officers, appellee received 1,155 votes and appellant 1,059. Appellant instituted this action contesting appellee's election. After the issues were made up, the court ordered a recount of eleven precincts in the district, as prayed by the parties, and appointed four tabulators selected by them to make the recount. The tabulators reported that appellant had received in these eleven precincts 924 votes and appellee 954. In the two precincts which were not contested he had received 114 votes, and she had received 151 votes. The court added 4 votes for each of them, thus making his total 1,042 and her total 1,109. No proof being offered, the court entered judgment in her favor. He appeals.

The contest turns mainly on precinct No. 50. In that precinct, according to the officers' returns, he received 185 votes, she 343; there were 2 spoiled ballots and two questioned ballots. On the recount of the ballots by the tabulators, he received 197 votes, she 294. There were 31 ballots in the box which were counted for neither, as they were marked in the square opposite both of their names. There were also 3 ballots in the box which the tabulators did not count for either, as they were not able

to determine how the voter intended to vote. There were in all 39 ballots in the box on which the pencil mark made for him had been erased and a pencil mark made in the square opposite her name. The tabulators counted 35 of these votes for her and one for him.

It is earnestly insisted for appellant that the 31 ballots, which were marked for both him and her should have been counted for him. He claims that an inspection of the ballots will show that the mark opposite her name was not made by the voter, but were all made by the same hand. But this court, like the circuit court, is unable to see that there is anything on the ballots to enable it to say that the mark opposite her name has been put there since the mark opposite his name or to warrant it in counting these 31 ballots for him. These ballots were counted by the election officers for her. It is presumed that the officers did their duty. They report that only 2 ballots were questioned and 2 spoiled. In addition to this, the tabulators who opened this box made a report in writing of their proceedings as to this precinct in these words:

"The first opened ballot box was from the town of Loyal, Precinct No. 50, which contained school ballots, and upon opening the box we found a large number of ballots in an envelope upon which the seal was broken and also a number of ballots which were loose and not in the envelope."

The tabulators had a stenographer to take their proceedings in shorthand, and filed as part of their report the stenographic report of their proceedings, which, as to precinct No. 50, is in these words:

"The tabulators then proceeded to open box No. 50 which was found to be locked, and which contained two large envelopes containing ballots, one of which when opened contained the official ballots for the county election in Loyal 50, precinct, and these ballots were returned to the ballot box. The other large envelope was marked C. M. Adeholt; Judge, A. J. Alwson, Judge, Earl Gothard, Sheriff, and W. G. Unthank, Clerk. This envelope had been sealed with sealing wax in three places with the county election seal impressed thereon, but it had been opened and was not sealed at the time opened by these tabulators. This envelope was found to

contain county election ballots and they were likewise returned to the envelope from which they had been taken and replaced in box No. 50.

"The tabulators then proceeded to open the third box No. 50 which was locked with two padlocks, and was found to contain one large envelope which was not sealed but which had been sealed in three places with wax and the impression of the county election seal impressed thereon and endorsed with the names of C. M. Adherholt, Judge, A. J. Lawson, Judge, Earl Gothard, Sheriff, and G. W. Unthank, Clerk. This envelope was found to contain a large number of school ballots and there was in the box a number of school ballots not in the envelope. This box also contained the city election ballots."

It is clear from this report that somebody had apparently been in this box. The envelope which had been sealed in three places was not sealed. All the school ballots were not in the envelope and some were loose in the box. The condition in which the box was found shows that somebody had apparently committed a fraud here; but no evidence is offered as to who had done this, or in whose interest it was done. It is not presumed, in the absence of proof, that the election officers committed a fraud, and, on the facts shown, the election cannot be set aside and a new election ordered. The case turns on the 31 ballots marked for both the parties and the 39 ballots marked for appellee with the mark for appellant erased. The same hand that put the second X on the 31 ballots may have made a second X on the 39 ballots, and then to hide his tracks may have erased it but left enough of it there to show it had been erased.

It is clear from the return of the election officers that all these ballots were counted for appellee and that there then were only 2 questioned ballots. As it is presumed in the absence of proof to the contrary that the officers did their duty, it must be presumed that these ballots were not then in the condition they are now. On the face of returns, appellee was elected. The returns make for her a prima facie case. Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69. The court now only holds that appellant has not overcome her prima facie case as shown that he was elected.

The rule is that the ballots are the best evidence of the voters' will, but this rule is conditioned strictly upon the fact that the integrity of the ballots is established clearly or with reasonable certainty, "but where they may have apparently been tampered with, or where opportunities have been afforded to unauthorized persons, or to persons interested to tamper with them, then the burden is upon the party producing and relying upon such ballots to establish their integrity clearly and satisfactorily by the evidence." Bailey v. Hurst, 113 Ky. 699, 68 S. W. 867, 24 Ky. Law Rep. 504; Thomas v. Marshall, 160 Ky. 168, 169 S. W. 615, 616, and cases cited. The condition of the ballots when the box is opened is an important factor in the determination of the weight to be given them. Phillips v. Kincaid, 194 Ky. 750, 240 S. W. 737. Here the condition of the ballots when the box was opened was such as to indicate that the ballots had apparently been tampered with.

Judgment affirmed.