CASE 91—CONTESTED ELECTION—NOVEMBER 19.

## Anderson v. Likens.

APPEAL FROM OHIO CIRCUIT COURT.

1. ELECTIONS—NOTICE OF CONTEST—WHEN TO BE SERVED.—Section 1535 of Kentucky Statutes, providing that no application to contest the election of an officer shall be heard unless notice thereof in writing signed by the party contesting be given, in the case of a circuit court clerk, within ten days after the official action of the Board of Canvassers, a certificate of election was issued and delivered to the appellant on November 5, 1897 and notice of contest was served on him on November 13, 1897. An action was instituted and judgment was rendered by the Ohio Circuit Court in mandamus proceedings compelling the Board of Canvassers to open the envelopes and count the contested ballots.

Anderson v. Likens.

Pursuant to the judgment of said court, the canvassing board re-assembled and counted said ballots on December 1, 1897, but the previous finding was not thereby changed. It is held by the court that the official action of the canvassing board within the meaning of section 1535 of the statutes was the action of the board which followed the opening and canvassing of the returns as therein provided, and the issual and delivery of the triplicate certificates provided for in section 1508 of the statutes. The appellee having by his notice acquired the right to contest, that right was not lost by the action of the Circuit Court.

2. SAME—JURISDICTION OF CIRCUIT COURT TO CONTROL THE ACTION OF THE CANVASSING BOARD.—The Circuit Court has no jurisdiction before the canvassing board has acted to determine in what manner particular contested ballots shall be counted by that board.

3. AMENDING THE NOTICE OF A CONTEST.—Under sub-section 1 of section 1535, Kentucky Statutes, providing that the notice shall state the grounds of contest, and none other shall afterwards be heard as coming from such party, the contestant was not entitled to file an amended notice of contest containing the names of additional electors whose ballots he desired to challenge.

4. CONTESTED ELECTIONS—EVIDENCE.—In the absence of a statement accompanying ballots questioned or rejected, showing whether said ballots were counted or not, and, if counted, for whom, the court can not hear evidence as to whether such ballots were counted and if so, for whom.

5. CONTESTED ELECTIONS—EVIDENCE.—It is not proper to throw out the vote of an entire precinct upon the ground that at such precinct the clerk failed in several instances, as required by sec. 1471 to write his name on the back of the ballot before handing it to the elector, and in other instances that the name of the clerk was actually written by another officer, where it does not appear by proof for which of the parties, contestant or contestee such challenged ballots were cast and counted.

6. ABSENCE OF OFFICERS FROM THE POLLING PLACE.—The courts are not authorized to throw out the vote of an entire precinct upon evidence that some of the officers of the election were absent from the polling place during the time the law required the polls to be kept open in the absence of proof that any elector was hindered or prevented from voting by reason of the temporary absence of such officer, or that such absence was volun-

Anderson v. Likens.

tary. In a case of voluntary absence from the poll it is the policy of the law to punish the officer and not the voters.

7. SAME—EVIDENCE.—Parol evidence is not competent to show how any ballot was cast or counted where the ballots were destroyed as required by the statute and not returned as questioned or contested ballots.

8. BALLOTS STAMPED BY OFFICERS.—It is proper to reject ballots stamped by the officers of election where the electors had not been previously sworn.

9. SAME—ABSENCE OF CERTIFICATE OF THE OFFICERS.—Where duplicate certificates were duly and properly made out and signed by all officers of the election constituting competent evidence of the correct returns of any precinct, the court is not authorized to throw out the vote of the precinct in the absence of the certificate of the officers required by statute to be made on the stub-book signed by all officers of election.

10. SAME—CHANGE OF VOTING PLACE.—It appeared from the proof that the original voting place had become unfit for the purpose of holding an election and at the year preceding the election in contest the polling place in Bartlett's had been at Chapman's dwelling house. In the year in contest, Chapman declined to permit his dwelling house to be used for that purpose and the election was held about half a mile from there and about fifty yards from a public highway, written notices of the change being posted prior to the day of the election at Bartlett's school house and at Chapman's. It further appeared that the place thus chosen was the nearest house at which the election could have been held. It is held by the court that the vote of that precinct was properly counted.

HEAVRIN & TAYLOR FOR APPELLANT.

1. The appellant Anderson was not bound by the judgment rendered by the Ohio Circuit Court in the mandamus proceedings because he was not a party or privy to said action and had no notice of its existence.

2. The ruling in refusing Likens leave to amend his ground of contest was correct. Sec. 1535 Ky. Stat.; Cowan v. Prowse, 93 Ky., 156; 14 Ky. Law Rep., 273; Wilson v. Hines, 99 Ky., 221; 18 Ky. Law Rep., 233.

3. Parol evidence is not competent to show how ballots were cast or

Anderson v. Likens.

counted in the absence of such ballots and after they had been destroyed.

4. The proof showing that there was a fair and full expression of the will of the voters in the select precinct, absence of the officers from the voting place during voting hours even if satisfactorily proved, would not be a ground to invalidate the vote of the precinct. Varney v. Justice, 86 Ky., 596; Major v. Barker, 99 Ky., 305; 18 Ky. Law Rep., 104.

5. It was not ground for invalidating the vote of the Bartlett's precinct that the voting place had been changed. Notice was given of the change and the full vote cast in the precinct. Am. & Eng. Enc. of Law, vol. 6, 323 and note 2.

6. At the East Fordsville voting precinct, duplicate returns were made out and signed by all officers of election and given to the judges, sheriff, clerk and inspectors of said election. The failure of the officers in view of this fact to sign the certificate is immaterial. Anderson v. Winfree, 85 Ky., 597; Cowan v. Prowse, 93 Ky., 156; 14 Ky. Law Rep., 273; Clark v. McKenzie, 7 Bush, 523.

7. The contested votes at Cromwell voting precinct should not have been counted for the appellee because they were not accompanied by the certificates of the officers showing whether or not they had been counted and if counted, for whom. Struss v. Johnson, 18 Ky. Law Rep., 771; 100 Ky., 319.

8. As to the ballot returned from the Small House voting precinct in envelope marked "B," the evidence shows that the ballot was an exposed ballot and ought not to be counted. Ky Stats., sec. 1474.

9. The ballots from West Fordsville voting precinct Marked "1, 2 and 3" had distinguishing marks and should not be counted for any one.

10. Nor should the three ballots returned by the officers of election in envelope "H" and marked "1, 2 and 3."

11. The ballots in envelope marked "G 1" and "E 1" were improperly counted for the appellee Likens. Hope v. Flentge, 41 S. W. R., 1002.

E. D. GUFFY, ALSO FOR APPELLANT.

1. The contest board and the lower court properly refused to permit appellee to file additional notices and grounds of contest for same were not offered within ten days prescribed by statute.

Anderson v. Likens.

If, however, the contention of appellee that the final action "of the Canvassing Board was, when it re-convened in obedience to the mandamus of the Circuit Court" is correct, then the original notice of contest was premature, and nothing could be considered except the so-called amended notice.

2. The judgment of the lower court is erroneous in that it discarded the entire vote in the East Fordsville and Bartlett's precincts;

3. Further, in deducting from the vote of the appellant in the McHenry voting precinct fifteen votes certified for him by the precinct officers.

4. The change in the place of voting in the Bartlett's precinct was not prejudicial to the appellee.

5. The failure of the officers in the East Fordsville precinct to sign the certificate is immaterial, because all of the officers did sign the other certificates provided by the statute and each official received one of them.

6. The ballots returned without statement of the officers of election as to whether they were counted and if so for whom, can not be considered. Struss v. Johnson, 100 Ky., 319; 18 Ky. Law Rep., 771; 41 S. W. R., 1002; Turner v. Thomas, 13 B. M., 518; Clark v. McKenzie, 7 Bush, 523; Houston v. Steele, 98 Ky., 596; Broadus v. Mason, 95 Ky., 421.

BEN. D. RINGO, JAMES S. GLENN, H. P. TAYLOR, SWEENEY, ELLIS & SWEENEY for appellee.

1. Contestee could have defended without written pleadings, but having filed a written counter notice, or response, he is limited to the matters set up in that pleading, sec. 1535, Ky. Stats.; Cowan v. Prowse, 93 Ky., 156.

2. While a contestant may not, by amendment, set up a new ground of contest, he may amplify or perfect a ground of notice originally set up by adding additional names of persons who it is claimed illegally voted.    Wilson v. Hines, 18 Ky. Law Rep. 221; Nash v. Craig, 1001, —— Southwestern Reporter (decided by Supreme Court of Missouri, May 26, 1896); Civil Code, sec. 134.

3. A judgment rendered in a mandamus proceeding, by a court of competent jurisdiction, directing how the vote between opposing candidates shall be counted, is binding upon everybody, whether actually parties to the record or not. Moses on Mandamus, p. 15; State v. County Judge, 7 Clarke (Iowa), 186; State v. Bailey, same report, 390; Sauls v. Freeman, 24 Florida, 209; Terry v.

Anderson v. Likens.

Town of Waterbury, 35 Conn., 526; Clark v. Wolf, 29 Iowa, 197; Freeman on Judgments, sec. 178; Merrill on Mandamus, sec. 315; Paine on Elections, sec. 912; State v. Cavers, 22 Iowa, 343; State v. Marlowe, 15 O., St., 114; State v. Harmon, 31 O. St., 250.

4. Ballots stamped in the small square opposite the first name that heads a party ticket, but stamped nowhere else, can only be counted for the candidate opposite whose name the stencil mark is placed. Houston v. Steele, 98 Ky., 596.

5. In an election contest Circuit Courts have power to go behind certificates of canvassing boards and declare the true result. Broadus v. Mason, 95 Ky., 431; s. c. 16 Ky. Law Rep., 38.

6. If election clerk is absent during the hours of election and other persons write the name of the election clerk on the back of the ballots, such ballots are, in the meaning of the law, marked ballots and should be rejected; and if it can not be ascertained for whom such ballots were cast the entire poll must be rejected. 23 S. W. R., 1104.

7. If the voting place in a precinct is changed from the place fixed by law without notice, the election held at such other place is a nullity, and the vote of the entire precinct must be rejected. Sections 1443, 1444, 1467, Ky. Stats.; McCrary on Elections (4th Ed.), secs. 153, 176; Preston v. Culbertson, 58 Cal., 193; Simmons v. People, 119 Ill., 617; 5 Rawle, 75; Marshall v. Kerns, 2 Swan., 68; Foster v. Scarff, 15 O. St., 532; Walker v. Sanford, 78 Ga., 165; In re Egly, 158 Pa. St., 65; McCrary on Elections, secs. 161, 225, 227; Ledbetter v. Hall, 62 Mo., 422; Tebbe v. Smith, 49 Am. St. R., 74; Knowles v. Yates, 31 Cal., 82; Payne on Elections, sec. 498; DeBerry v. Nicholson, 11 Am. St. R., 768; Chadwick v. Melvin, 68 Pa. St., 333.

8. Where the officers of election fail to certify the returns from the precinct the vote cast in such precinct can not be counted and should be rejected. Kentucky Statutes, secs. 1482, 1483; Helton v. Asher, 20 Ky. Law Rep., 935, Court of Appeals decision May 27, 1898; Ormsby v. City of Louisville, 79 Ky., 197.

9. Officers of election may testify that voters had their ballots stamped by another without first being sworn as required by the statute, and may testify for whom such ballots were cast. Sections 1475, 1571; Com. v. Barry, 98 Ky., 394; 17 Ky. Law Rep., 1018.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

S. A. Anderson and G. B. Likens being opposing candidates for the office of circuit court clerk of Ohio county at the November election, 1897, the canvassing board found the former had received 2,408 votes, and gave him a certificate of election, while the latter had received only 2,393 votes; and that finding was affirmed by the contesting board of the county. But the Ohio Circuit Court, to which an appeal was taken, adjudged that Likens had received a majority of 97 of all the votes cast for the candidates for circuit clerk at said election, and was duly and legally elected, that the certificate of election issued to Anderson by the canvassing board be canceled and held for naught, and that he deliver possession of said office, and all the books, papers, and furniture connected therewith, to Likens. On the appeal from that judgment various questions arise, necessary to be determined by this court.

The first question we will consider is whether the notice of contest was premature. It appears that the finding of the canvassing board was made, and certificate of election issued and delivered to Anderson, November 5, 1897, and notice of contest was served on him November 13, 1897. But there were sealed envelopes, containing numerous ballots, returned from the various precincts to the clerk of the County Court with the returns of the election, in compliance or attempted compliance with article 3, section 37, of the election law. Those envelopes not having been opened by the canvassing board, and the ballots therein counted or passed on, prior to its finding and delivery of certificate of election to Anderson, the Ohio Circuit Court, in a proceeding instituted by Likens November 27, 1897,

[45]

caused the envelopes to be opened in court, proceeded to investigate the ballots in order to determine which of them should be counted and for which candidate counted, and thereupon caused a writ of mandamus to be issued, requiring the canvassing board to count said ballots in the manner and for the two candidates, respectively, as then adjudged by the court. It appears that the canvassing board, in obedience to said writ, on December 1, 1897, reassembled and counted said ballots, but the previous finding was not thereby changed. By section 1508, Ky. Stat., it is provided that within two days next after an election the sheriff shall deposit with the clerk of the County Court the returns of the different precincts. On the next day the canvassing board, composed of the judge of the County Court, the clerk thereof, and the sheriff, or one of his deputies, if he can not act, is required to meet in the clerk's office between 10 and 12 o'clock in the morning, open and canvass the returns of such election, and issue triplicate or more written certificates of election, over their signatures, of those who have received the highest number of votes for any office exclusively within the gift of the voters of the county; one copy of the certificate to be retained in the clerk's office, another delivered to each of the persons elected, and the other forwarded by the county clerk to the Secretary of State, at the seat of government. Section 1534 provides that the judge of the County Court and two justices of the peace residing nearest to the court house in each county shall be a board for determining the contested election of any officer elected by the voters of the county or any district therein. Section 1535 provides that no application to contest the election of an officer shall be heard unless notice thereof, in writing, signed by the party contesting, be given, in the

case of a Circuit Court clerk, within ten days after the final action of the board of canvassers. Whether the notice of contest in this case was premature depends upon when, in meaning of the statute, *the final action* of the board of canvassers, or in the language of subsection 2, section 1534, "the decision" of that board, occurs. It is plain to us that the issual and delivery of the triplicate certificates provided for in section 1508, which follows the opening and canvassing of the returns as therein provided, is the final action of the canvassing board, and, to maintain a contest, the party contesting must give the required notice within ten days next after that time. Moreover, we think, Likens having, in the manner provided by statute, acquired the right to contest, that right was not forfeited or waived by the institution of the proceeding for the writ of mandamus. Whether the Ohio Circuit Court had power to require the canvassing board to reassemble and count the ballots contained in the sealed envelopes, as directed by the court, we need not now determine, because the previous finding was not changed or affected thereby. Nor, for the same reason, would it be indispensable for us to now determine whether the Ohio Circuit Court had jurisdiction to open said envelopes, and adjudge what ballots were fit to be counted, and how they should be counted, if counsel had not earnestly contended that judgment was final, and had concluded both parties as to the manner in which the ballots should be counted. While the Ohio Circuit Court had jurisdiction to hear an application for a writ of mandamus, if applied for in due time, and to command the canvassing board to open the sealed envelopes and canvass the ballots therein contained, we are clearly of the opinion it did not have jurisdiction, at that stage of the case, and in that character of proceeding, to determine

and direct either what ballots contained in said envelopes should be counted, or how they should be counted.    Consequently the judgment did not conclude either party; for the mode and time of judicial investigation as to the meaning, legality, and regularity of the ballots thus required to be sealed up and returned to the clerk of the County Court as the statute provides is by appeal to the contesting board, evidently intended to be invested with judicial functions, thence by appeal to the Circuit Court, thence to the Court of Appeals.

2. The next question is whether contestant (now appellee) had the right to file the amended notice that was not given until December 6, 1897, which both the contesting board and Circuit Court refused to hear.    It seems to us, subsection 1, section 1535, is decisive of that question, being as follows:  "The notice shall state the grounds of the contest and none other shall afterwards be heard as coming from such party."    But it is contended the amended notice in question did not, nor was intended to, contain additional or other grounds of contest, but merely to make more specific the grounds already stated.    Some of the grounds, as set out in the original notice, were that the ballots of various designated voters were, by officers of election at certain precincts, stamped without the previous oath of such elector of his inability to read the English language, required by section 1475 to be made.  ·  The amended notice contained the names of additional electors whose ballots were stamped under the circumstances mentioned.    Ordinarily such an amendment would be allowable and just, but, looking to the manifest policy and purpose of the statute, we are satisfied that the amended notice comes within the inhibition of subsection 1, section 1535.    That policy is to require the proceeding for con-

Anderson v. Likens.

testing the election of an officer, for public reasons, to be commenced as soon as practicable after the final action of the canvasing board, and terminated by judicial decision, without continuance or delay usually tolerated in litigation of other matters.

3. Of the whole number of ballots contained in the sealed envelopes referred to, the lower court, upon appeal from the contesting board, adjudged that fifteen be counted for Likens, and two for Anderson. But it appears from an inspection of those ballots that none of them were accompanied "with a true statement as to whether they had or had not been counted, and if counted what party and for whom," as required by article 3, section 37.   There was no statement at all in relation to any of them, except five or six; and the statement as to each of them was not only meager, but was signed alone by the clerk of the election, and not all of them signed by him officially.   We think the statement should be full and complete, as required by the statute, and signed officially by all the officers of the election.   Moreover, section 1476 seems to prohibit such statement being made upon the ballot itself, as was done by the clerks in the cases referred to.  .Consequently the statement, in order to carry with it verity, must be made upon a separate paper, signed by all the officers of the election; and its relation to the particular ballot it refers to must be clearly shown by attaching them together, or in some other satisfactory manner, and sealed up and returned to the clerk of the County Court with the returns of the election.   Questions as to the fitness of some of the ballots contained in the sealed envelopes to be counted, and for whom counted, were decided by the lower court, and have been argued by opposing counsel in this court.   But as, for the reasons stated,

none of them afford competent evidence of any fact, or can be considered for any purpose, we need not discuss or determine any question relating to the efficacy or meaning of any of them.

4. Another ground of contest is that at one of the precincts the clerk failed in several instances, as required by section 1471, to write his name on the back of the ballot before handing it to the elector, and in other instances the name of the clerk was actually written by another officer. As there is no evidence—even if, in absence of the destroyed ballots, any could be heard on the subject—showing that the non-performance or improper performance of that duty was prejudicial to either candidate, we do not think it would be proper to do the only thing that could be done in such case; that is, throw out the entire vote of that precinct.

5. Another ground of contest is that at two or more precincts some of the officers of election were absent from the polling places while the election was being held. Section 1469 requires the polls to be opened at 7 o'clock in the forenoon, and kept open continuously up to, and closed at 4 o'clock in the afternoon of the same day; and not only was the presence of all the officers contemplated, but it is the implied duty of each one to be present while the polls are open. But the evidence does not show for which one of the parties to this contest, during the absence of any one of the officers of election, votes were given, nor that any elector was hindered or prevented from voting by reason of the temporary absence of any one of the officers, or that such absence was not involuntary. The court therefore is, we think, not authorized for that reason alone to throw out the vote of an entire precinct, and thereby deprive the electors of their right of suffrage. Punishment, if inflicted

.at all, must be, not upon the voters, but upon the officers who have neglected or violated the duty imposed upon them by law. We do not, however, decide that such con-- duct of officers of an election might not be so flagrant or fraudulent as to wrong one or another of opposing candi- dates, and defeat a free and fair election.

6. There is evidence showing that at two of the pre- cincts fifteen ballots were counted for Anderson, although the cross was stamped by the several voters, not in the square containing the Republican device, nor in the small square containing the name of Anderson, but alone in the square containing the name of James G. Bailey,' candidate for clerk of the Court of Appeals, and whose name was at the head of the Republican ticket; the name of Ander- son being on the same ticket below. There were also six ballots counted for Likens, stamped alone in the square containing the name of Samuel J. Shackelford, candidate for clerk of the Court of Appeals, also at the head of the Democratic ticket. The lower court adjudged those bal- lots improperly counted, resulting in a gain of nine votes for Likens. All those ballots were destroyed by the offi- cers of election, and consequently the manner in which they were stamped could be shown only by oral testimony, which it seems to be the policy of the law not to hear or consider in such case. It is true that this court has held, in the case of Major v. Barker, 18 Ky. Law Rep., 104 [35 S. W., 543], that it may be shown by secondary evidence that a ballot was stamped by officers of election without the previous oath of the elector required by statute, and, when the fact is thus established, the ballot, although counted and destroyed, is to be treated as a nullity, and the vote deducted from the candidate receiving it.

In such case the act is expressly forbidden by statute, is

always committed before the ballot is put in the box and counted, and could not be shown by the ballot, if present, but must be established, if at all, by oral testimony alone. But in what particular square of a ballot the cross has been stamped by the elector is shown by the ballot itself, and as the statute requires ballots, after being counted, to be destroyed, it would seem to be the legislative intention to exclude oral testimony as to how it had been stamped.

7. The evidence shows that seventeen ballots, stamped at the various precincts by officers of election without the electors being previously sworn, were counted for Anderson, and fourteen for Likens; making a net gain for the latter, according to proper finding of the lower court, of three votes.

8. It is made a ground of contest that at East Fordsville precinct, where Anderson received a majority of fifty-five, the certificate of the officers required by statute to be made on the stub book was not signed by all the officers of the election. Upon that ground the vote of that precinct was by the lower court thrown out. But as there were duplicate certificates duly and fully made out and signed by all the officers of the election, and which were competent evidence of correct returns of that precinct, the defect of the original certificate did not render the election held at East Fordsville void.

9. It is contended that the election held in Bartlett's precinct, which gave Anderson a majority, was invalid, and the vote thereof should be rejected. The evidence shows Bartlet's school house, the original place of voting, had become unfit for the purpose of holding an election, and the election of 1896 was held at Chapman's dwelling house. But he forbade the election of 1897 being there held, and consequently it was held at the Gray house, about one-

Anderson v. Likens.

half mile therefrom, and about fifty yards from a public highway. It satisfactorily appears that Gray's was the nearest house to Chapman's that could be procured; that written notices of the change were posted prior to the day of the election at Bartlet's school house and at Chapman's. It does not satisfactorily appear that any elector was misled or misinformed of the change, or failed to attend the election by reason of the change. The statute on the subject is as follows: "If for any good cause an election can not be held at the house appointed as the place of voting, the judges of the election may, on the morning of the election, adjourn it to the most convenient place, after having publicly proclaimed the change, and posted notices of same on said house." [Ky. Stat., section 1443.] In our opinion, the law being substantially complied with, the vote of an entire precinct should not be rejected by reason of a change of the voting place, when it appears, as it does in this case, that the place selected is the nearest that could be obtained to the former voting place, and when it does not appear either that the change was fraudulently made, or that any elector was thereby deprived of his privilege of voting.

It will be observed that, according to the evidence in this case that we deem competent, there should be deducted only three votes from the majority found by the canvassing board in favor of Anderson. Wherefore the judgment of the lower court is reversed, and the cause remanded for proceedings consistent with this opinion.