Case 71.—ELECTION CONTEST BY R. G. CARY, AGAINST ELLSWORTH McEUEN FOR THE OFFICE OF COUNTY CLERK OF McLEAN COUNTY.—Oct. 12.

## McEuen v. Carey.

Appeal from McLean Circuit Court.

T. F. BIRKHEAD, Circuit Judge.

Judgment for contestant. Contestee appeals. Affirmed.

1. Election Officers—Mistaken Election Certificate—Duty to Correct—Where on the day after the election the election officers discovered they had made an error in their return, it was their duty to correct the error and on a refusal they can be compelled to do so by a writ of mandamus.
2. Certifiate—Prima Facie Evidence—Ballots—Best Evidence—Under the rule in this State the certificate of the precinct officers is prima facie evidence of their correctness, but if the ballots have been lawfully kept and are shown not to have been tampered with they must prevail over the certificate.
3. Custodian of Ballots—Candidate—Presumption—The fact that the ballot box was placed in the custody of the county clerk, who is the legal custodian thereof; will not warrant the court in assuming that they have been tampered with, although such clerk may have been one of the candidates voted for; it being more consonant with justice to believe that the officers of the election were mistaken in their count than that the clerk was guilty of a crime.

MILLER & TODD, JOE H. MILLER, LITTLE & TAYLOR and GREENE & VANWINKLE. for appellant.

## POINTS AND AUTHORITIES.

**1. The Demurrer to the appellant's answer was properly over-ruled.** If the election officers had failed or refused to correct the returns from the precinct in question, the appellant could have maintained an action for a mandatory injunction, compelling them to make the correction. (Clark v. McKenzie, 7 Bush, 528. Bennett v. Richards, etc., 83rd, S. W. Rep., 154.)

**2. Informalities in the certificate from an election precinct are not sufficient to deprive the candidates of the votes received by them in such precinct.** (Keller v. Ferguson, 24 Ky. Law. Rep., 1210; Clark v. McKenzie, 7th Bush, 526; Preston v. Price, 27th Ky. Law Rep., 588; Anderson v. Likens, 104th, Ky., 712.)

**3.** The duplicate certificates made by the election officers of the precinct in question are competent evidence as to the result in that precinct, and have the same legal effect as the certificate pasted in the stub-book returned from the precinct. (Anderson v. Likens, 104th, Ky., 712.)

**4. The charge in the petition that the election officers were guilty** of misconduct in absenting themselves from the voting place, is not sustained by the evidence. It is shown that only one or two of the officers left the voting place, and then only for some necessary purpose and for the shortest possible time. This was not misconduct. (Major v. Barker, 99th Ky., 305; Anderson v. Likens, 104 Ky., 710.)

**5.** The charge that the election officers were guilty of misconduct in having whiskey in the voting place, is refuted by the testimony, which shows that not one of the officers was intoxicated, or was under the influence of liquor at all. (Bailey v. Hurst, 113th Ky., 699.)

**6. Under the evidence as to the condition of the ballots from** Rumsey precinct, and the manner in which they had been kept, these ballots were not admissible as evidence and cannot be considered for any purpose. (Hamilton v. Young, 26th Ky. Law Rep., 447; Edwards v. Logan, 24th Ky. Law Rep., 1099.)

SWEENEY, ELLIS & SWEENEY and J. W. BOSTON for appellee.

## SYNOPSIS OF ARGUMENT AND AUTHORITIES.

**1.** The evidence given by the officers of election that the result in the Rumsey precinct between the parties to this appeal was different from that contained in their official certificate which they made in the back of the stub book was not competent and can be considered for no purpose whatever.

**2.** In the absence of any evidence that either the ballot box,

McEuen v. Carey.

the locks or the ballots contained in the box had been tampered with (and there is no such evidence in this case) the court will count the ballots and the result thus ascertained is the very best evidence of the vote cast at the precinct in question.

3. The election officers of Rumsey precinct had no basis or data upon which to make any statement whatever as to the vote cast in that precinct except the official certificate in the back of the stub book, therefore any oral evidence given by them was from recollection alone and it is incompetent.

4. The officers of Rumsey election precinct had no power or authority to change the result as certified by themselves on the night of the election from their precinct two or three days later and especially as that pretended change was based as one upon their mere pretended recollection.

5. The Court must not overlook the fact that all the election officers for Rumsey precinct were hostile to Appellee.

### AUTHORITIES CITED BY APPELLEE.

1. Election officers of Rumsey precinct had no power to change their returns after they delivered the ballot box and poll books to the County Court Clerk and the lower Court should have so held. (McCreary on Elections, 4 Ed., Sections, 234, 259, 260; O'Gorman v. Richter, 31 Minn.; McCreary on Elections, Section 265, [4 Ed.]; Morgan v. Quackenbush, 22 Barbour, N. Y., 72; State v. Calvert, 98 N. C., 580; McCreary on Elections, Section 267; [4 Ed.]; Brown v. Hixon, 45 Mo., 430; Gooding v. Wilson, 42 Mo., and note 7; People v. Albany County Canvassers, 46 Hun. N. Y., 390; McCreary on Elections, [4 Ed.,] Section 268; Clark v. Bucannon, 2 Minn., 346; Re Board of Canvassers, 12 N. Y., Supp., 174; Rice v. Board of Kansas, 50 Kan.; State v. Donnewirth, 21 Ohio St., 216; 10 American & Eng. Ency., 2 Ed., 750; 15 La., 464; State v. Knight, 6 Houst. [Delaware], 146; People v. Board of Town Canvassers, 19 N. Y., Supp. 206.)

2. Effect of Conflicting Certificates. We contend that where certificates are conflicting, no importance can be attached to them and that the ballots must be considered, or else the vote from the precinct must be disregarded. (American & Eng. Ency., Vol. 10, 2 Ed., 764; Ewing v. Thompson, 43 Pa. St., 372; American & Eng. Ency., Vol. 10, page 736; Hadley v. City of Albany, 88 American Dec., 412; Rosenthal v. State Board of Canvassers, 19 L. R. A., 158.)

3. A distinction between the case where election officers have completed their work and have not completed it, regardless of whether they did their work right or wrong, considered. (City of Louisville v. Board of Park Commissioners, 112 Ky.; Payne on

Elections, Sections 590-622; Hamilton v. Young, 26 Ky., L. R., 422-53; Kellar v. Ferguson, 24 Ky., L. R., 1205-1216; Preston v. Price, 27 Ky., L. R., 598.)

4. Ballots will overthrow election returns where ballots have been kept intact. (Anderson v. Likens, 104 Ky., Boone County Judge v. Kenner, 104 Ky.)

OPINION BY JUDGE BARKER—Affirming.

At the general election held November 7, 1905, in McLean county, Ky., the appellant, Ellsworth McEuen, was a candidate on the Republican ticket, and the appellee, R. G. Cary, was a candidate on the Democratic ticket, for the office of county clerk, and this case involves a contest as to which of the two was lawfully elected to that office. McLean county has eleven precincts, one of them being Rumsey. It is conceded that the election returns from all of the precincts except Rumsey were correct, and the merits of the contest, so far as the issues of fact are concerned, turns upon the proper count of the votes at this precinct. While the record is somewhat voluminous, the facts involved are comparatively few and simple. We have no doubt that, by the count of the officers in the contested precinct, the appellant received 212 votes, and appellee 153, and that these figures were placed on the official tally sheet. When the four certificates required by the statute came to be made out, two of them showed the vote between the parties hereto to be as before stated, but by a mistake of the copyist the vote between the rival candidates for the office of county attorney was copied on the other two certificates, thus showing that the vote stood 186 for appellee, and 176 for appellant. One of these erroneous certificates was returned with the stub book and ballots to be used in the official count by the election commissioners. On the day after the election (November 8th) the officers in some way discovered the error that had been made, and informed appellee of it and on the 10th with the con-

sent of appellee, they changed the certificate by making it conform to the real fact—that by their count appellant received 212 votes, and appellee 153. While the change was made to correct the manifest mistake in the certificate by the consent of appellee, we do not think his consent was necessary. It was the duty of the officers to return a true statement of the vote as shown on the tally sheet, and until this was done they had not performed their whole duty in the premises; and had they refused to make the correction, it is well settled in this State that they could have been compelled to do so by a writ of mandamus. Batman v. Megowan, 1 Metc. 540; City of Louisville v. Board of Park Com'rs, 65 S. W. 860, 24 Ky. Law Rep. 38; Id., 77 S. W. 1133, 25 Ky. Law Rep. 1309; Bennett v. Richards (Ky.) 83 S. W. 154; Anderson v. Likens, 104 Ky. 699, 47 S. W. 867, 20 Ky. Law Rep. 1001. With the official returns thus corrected, it was shown that appellant was elected by a small majority, and in accordance with their duty in the premises the commissioners awarded him the certificate, and he was inducted into office thereunder.

Thereupon this action was instituted by the appellee to contest the election of appellant, claiming that, as a matter of law, the election officers had no right to make the correction in the official returns from Rumsey, and, as a matter of fact, by a correct count of the vote of that precinct he was elected, instead of appellant. This was denied, and, without further notice of the somewhat lengthy pleadings, it may be stated that the issues of fact were properly made upon which depend the question which of the contending parties was elected to the office for which they were candidates. Upon the trial the court, in the presence of the parties in interest and their attorneys, opened the ballot boxes and counted the ballots in the contested race, with the result that they showed appellee had received 176 votes and appellant 196; and

it is conceded that if this count be correct (and it is correct if the ballots were not disgraced), the appellee was elected in the whole county by 20 votes.  The question, then, comes to this:  Whether the official returns, or the count of the ballots by the court, shall prevail.  If the official returns prevail, then this case must be reversed, because appellant was elected; if the count by the court of the ballots be accepted, then the judgment must be affirmed, for the reason that appellee was elected—it being conceded that he received a majority of 40 in all of the precincts of McLean county, omitting Rumsey, and the count of the court showing that appellant received a majority of 20 votes in Rumsey precinct, thus reducing the majority of the former in the whole county to 20.  But, if the count of the officers prevails, appellant had a majority of 58 in Rumsey precinct, thus overcoming appellee's majority of 40, and electing appellant by a majority of 18.  For the purpose of this appeal, the corrected certificate will stand as if no mistake had originally been made, and we are thereby brought face to face with the proposition as to which is to prevail in the final analysis of our legal problem—the return of the officers or the count of the ballots.

The rule in this State is firmly established that in an election contest the certificate of the precinct officers is prima facie evidence of the correctness of their count; but if the ballots themselves have been lawfully kept, and are shown not to have been tampered with then they must prevail over the certificate. Bailey v. Hurst, 113 Ky. 699, 68 S. W. 867, 24 Ky. Law Rep. 508; Edwards v. Logan, 114 Ky. 312, 70 S. W. 852, 24 Ky. Law Rep. 1099; Hamilton v. Young, 81 S. W. 682, 26 Ky. Law Rep. 447.  In the case at bar appellee and his son, who was his only deputy, both testify positively that no one tampered with the ballots while in their custody, and there is no evidence whatever that they had been changed, unless the bare fact

that they disagree with the returns of the precinct officers can be so considered. The law makes it the duty of the county clerk to receive and keep the returns of the precinct officers until they have served their ultimate purpose. He cannot escape this duty if he would, and he has no right to shift the responsibiity to another. Even when a party in interest, as here, it is none the less his duty to keep and preserve the official returns. He is not only a trustee in his own election, but also in that of the other candidates for the various offices involved, and in a higher sense he is the trustee for the people, whose interest overshadows that of the candidates. And while, so far as his own interests are concerned, a sensitively scrupulous officer might desire, as between himself and his opponent, to place the ballots in the custody of some disinterested party, yet we know of no principle which would authorize him thus to shift the duty which the law imposes upon him. This being true, it must follow that, legally, no adverse presumption, based upon self-interest, can be drawn against the county clerk, engaged in a contest for his office, because of his custody of the ballots. If this were otherwise, then a disastrous presumption would be drawn against an officer merely from the fact that he was faithfully discharging the duty imposed upon him by law. It may be admitted that, as a matter of fact, the temptation to manipulate the ballots in his own interest, where he has the opportunity, is as great in the case of a county clerk as that of any other candidate; and this consideration may induce the conclusion that the law itself is at fault, but it will not warrant the court in assuming that the ballots are disgraced because they were in the possession of their lawful custodian, even though a party in interest.

When the box containing the ballots was opened, they were found by the court and the attorneys, so far as the eye could detect, to be in perfect condition.

They were properly sealed, with the officers' signature at the proper place, tied as the law requires, and on their face apparently in the same condition as when they left the hands of the precinct officers. The trial court, before opening the package, submitted it to the careful inspection of the attorneys and parties in interest, and it is not contended here that the careful examination given by the court and counsel showed the slightest indication that the ballots had been unlawfully tampered with. So the question comes down to this: Whether we shall, as a solution of the dilemma, presume that the officer in whose custody the law placed the ballots was so lost to honor as to betray the high trust imposed upon him by his oath of office, or whether the officers of election made a mistake in the count. The difference between the count of the precinct officers and that of the court is made up of two items: First, there were 14 ballots stamped under the Republican emblem, and also stamped in the square opposite the name of appellee; and, second, 9 ballots which were voted under the Prohibition emblem were also stamped in the square of appellee. So that the officers of election, if the court's tally is correct, must have failed to count for appellee these individual votes which he received from the Republican and Prohibition voters; and whether they did or did not make this mistake is the real question in this case.

It is insisted for appellant that great confidence should be placed in the count of the officers, because, as a whole, they were composed both of Democrats and Republicans, and the challengers and inspectors of the respective parties were there and participated in the count, and it is hardly possible that these seven men could have been so egregiously mistaken in so many instances; and it must be confessed that there is great force in this claim. But, on the other hand, it must not be forgotten that in the count of the votes

by the officers of the election all do not participate in
every part of the count. Usually, as the evidence
shows was done in this case, one officer calls off the
ballots, and another, or others, tabulate them. It re-
quires but little familiarity with the conduct of elect-
ions to realize how easy it is for mistakes to creep into
the official count at the end of the day. In the first
place, the officers have been on duty for many hours,
and are usually weary with the duties of the day
when the count commences. The judges are gener-
ally elderly men, selected for the wisdom which ought
to come with age, and the count of the votes, as in the
case at bar, usually takes place after dark. Often
the light is poor, and under these circumstances it can
readily be seen how easy it is for an old man, with
dim eyes and a poor light, to overlook sporadic votes.
It is conceded that, in races other than the one in-
volved here, several mistakes were made in the count
of the officers, so that it is apparent that they were not
infallible; and admitting, as is done here, that they
made a number of mistakes, we do not see why their
count in the clerk's race should be deemed beyond the
possibility of error. In the first place, they made the
original mistake of copying the totals in the county
attorney's race for the votes in the county clerk's
race; one of the candidates for another office received
100 votes which they omitted altogether to give him,
and there were several other errors of minor import-
ance which we do not feel it necessary to state with
particularity.

We do not believe the officers were drunk, although
there is evidence in the record tending to show that
the clerk was intoxicated, and that others were under
the influence of liquor. But it is admitted to be true
that there was a quart bottle of wine in the room
where the election was held, and it was, to some extent
imbibed by the officers. Assuming as we do, that they
did not intoxicate themselves, yet this fact shows that

they were guilty of a violation of the law (section 1575, Ky. St. 1903); and, being wilful violators of their sworn duty in this regard, the weight which we would otherwise feel was due the result of their official labors is materially lessened. Upon the whole case, we agree to the conclusion of the trial judge: upon this question—that the officers honestly failed to count all the votes that were cast for the appellee. Of course, we recognize that there is room for doubt, and for an honest difference of opinion in regard to the facts of this case; but we are fully persuaded that it is more consonant with justice to believe that the officers of election were mistaken in their count than that appellee was guilty of a crime; and after all it comes to this.

We have not discussed in detail all of the evidence upon the trial below, but it may not be inappropriate to say that every member of the court has taken a personal interest in investigating the facts of this case, that we have considered it maturely, and are unanimously of opinion that the judgment should be affirmed; and it is so ordered.