## Hall v. Webber et al.

(Decided May 7, 1929.)

W. D. O'NEAL for appellant.

JOHN T. DIEDERICH for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Dismissing appeal.

The appellant, Dr. J. C. Hall, and one of the appellees, Dr. George G. Bell, were candidates at the November election 1928 for membership on the city board of education in Ashland. There were other candidates, but appellee was one of the three receiving the highest number of votes according to the count made by the election commissioners. But appellant instituted his suit, alleging that he would have received more votes than appellee, if all of the votes in the race had been certified in all of the precincts. He alleged, in his petition, that the election officers in precinct No. 41, known as the Unity precinct, failed to certify the votes received by the candidates for the position of membership on the board of education, and that if the votes in that precinct had been certified, and had been taken into consideration by the county board of election commissioners in making the count, he would have received more votes than appellee. His petition was filed against the four election officers of that precinct, the three members of the county board of election commissioners, and the appellee, who received the certificate of election. He alleged that the county board of election commisisoners did not count the votes from the precinct because they had not been certified by the election officers, and that the certificate of election issued to appellee by the board of election commissioners was wrongfully and illegally issued. He alleged that he had no adequate remedy at law, and he therefore sought a mandatory injunction against the election officers to require them to assemble and count and certify the votes cast in that precinct for the candidates for the board of education, and he further sought an injunction to compel the county board of election commissioners to reassemble and canvass and count the votes from that precinct, and to compel them to issue a certificate of election to the three candidates receiving the highest number of votes, of which he alleged he was one. He also prayed that the election commissioners be required to cancel any

certificates in conflict with the certificate issued as prayed for by him.

The election officers filed an answer, in which they admitted their failure to certify the votes for members of the board of education in their precinct, and they expressed their willingness to reassemble and count and certify the votes cast in those races.

In support of his motion for a mandatory injunction he filed an affidavit of one of the election officers showing that the votes were not counted in that precinct for the candidates for the board of education, and giving it as his recollection that appellant received 180 votes and appellee received 47 or 48 votes in the precinct. He filed other affidavits tending to show that the ballot box had been properly cared for after it was returned to the county court clerk. Appellee filed an answer controverting all of the allegations of the petition, and in a separate paragraph pleading that the ballots used in precinct No. 41 were not printed on the ballot in the manner required by section 3235a8, Ky. Stats., in that the names of the candidates on the ballot were not rotated by shifting the name of the appellee to first place after the first 50 ballots, and making a like change with every series of 50 ballots. After appellee filed his answer, the appellant amended his petition by withdrawing therefrom his allegation in the petition, and prayer that the certificate issued to appellee by the board of election commissioners should be directed to be canceled.

At the conclusion of the evidence the lower court dismissed appellant's petition, and, in a written opinion, he set out that at the time the action was filed the board of election commissioners had met at the time and place provided by law, and had canvassed the returns and granted certificates of election to the three candidates receiving the highest number of votes, including appellee. He recited that the votes cast in precinct No. 41 were not included in the canvass made by the county board of election commissioners. He found that a mandatory injunction could not be awarded under the facts disclosed by the record, but he did not dismiss the petition for that reason. He treated the petition as a contest, and denied the relief sought on the ground that the ballots were not printed for that precinct in accordance with the provisions of the section aforesaid of the Kentucky Statutes, and because of the failure to so print

them they should not have been counted. Treating the ballots in that precinct as void, he dismissed the petition. As the ballots were illegal, in the judgment of the lower court, appellant was not entitled to have them counted.

The judgment was entered in the lower court on November 24, 1928. The record was not filed in this court until January 21, 1929. If the lower court was correct in treating this proceeding as a contest under the provisions of section 1596a12, Ky. Stats., this court had no jurisdiction, as the record was filed too late. That section contains the specific provision that the record must be filed in this court within 30 days after the final judgment in the circuit court. The requirement that the record be filed in this court within 30 days after the final judgment in the circuit court is mandatory.

It is contended by counsel for appellant that the proceeding is not a contest of the election, but a suit for a mandatory injunction requiring the election officers to certify the votes in precinct No. 41. Several cases are relied on by appellant as supporting his theory of the case. In the case of McEuen v. Carey, 123 Ky. 536, 96 S. W. 850, 29 Ky. Law Rep. 931, it was said by this court: "It was the duty of the officers to return a true statement of the vote as shown on the tally sheet, and until this was done they had not performed their whole duty in the premises; and had they refused to make the correction, it is well settled in this state that they could have been compelled to do so by a writ of mandamus."

A number of cases are cited where it had been so held. That case, however, did not involve the question directly. It appeared there that the officers in a precinct had made a mistake, and they voluntarily corrected it before the canvass by the county board of election commissioners. The court held that their act in making the correction was authorized.

The case of Riddell v. Childers, 156 Ky. 315, 160 S. W. 1067, is relied on by appellant. That was a proceeding to compel certain election officers to meet and certify the vote in the race for circuit judge. The board of election commissioners in the county where the proceedings were had did not have the authority to issue the certificate of election to the circuit judge, as their duty ended when they made out a statement of the votes in their county in that race and certified it to the proper officer. The cases therein cited, and the cases cited in McEuen

v. Carey, supra, are substantially all of the cases on the point in this jurisdiction. It appears clear from these cases that election officers may be compelled to discharge their duties by making a proper certification of the vote in their precinct; These cases all appear to have involved questions where there had been no certificate of election issued. There is no doubt that election officers may be compelled to make a proper certification of the votes in their precinct, so that they may be included in the canvass made by the county board of election commissioners; but, after the county board of election commissioners have canvassed the votes and issued a certificate of election the remedy is by contest, as is provided by the provisions of 1596a12, Ky. Stats. Doss v. Howard, 180 Ky. 413, 202 S. W. 891.

In its main essentials the principles governing this case are the same as those governing in the case of Hewlett v. Carter, 194 Ky. 454, 239 S. W. 789. An injunction was sought in that case to prevent the canvass of the vote by the election commissioners, because, as it was alleged, the name of one of the candidates was not properly printed on the ballots. His certificate of nomination had not been properly issued or filed in time, according to the allegations in the petition of his opponent. In a well-considered opinion this court held that, notwithstanding the form of the action, it was a contest proceeding. On that point the court said:

> "Plaintiff insists that this is a contest proceeding, but defendants contend otherwise, because, as they claim, it is styled 'petition in equity,' when the statute requires the initial pleading to be only a 'petition,' and because the parties are designated 'plaintiff' and 'defendant,' instead of 'contestant' and 'contestee'; but these unsubstantial matters will not be allowed to defeat the inherent nature of the proceeding, which we hold is to all intents and purposes the statutory remedy for contesting the election."

In the case before us the initial pleading is styled "petition in equity," and the appellant is styled "plaintiff," and the appellee and others are styled "defendants." The petition contains the allegations necessary in a petition filed in an election contest. Appellant prayed, not only for the specific relief heretofore mentioned, but

his prayer was for "all proper relief." The county board of election commissioners had completed the canvass of the votes and had issued a certificate of election to appellee. The allegations in the petition were sufficient to have authorized the trial court to open and count the ballots cast for candidates for the school board in precinct No. 41, if it was shown that the ballots had been preserved inviolate and without opportunity for their violation. The trial court treated the proceeding as a contest and decided that the votes cast in that precinct were illegal, and for that reason alone he held they should not be counted. We may not be in accord with the reasons given by the chancellor for his judgment, but as the record was not filed in this court in time to give it jurisdiction we cannot pass on the question.

The record was not filed in time, and it follows that we are without jurisdiction to pass on the merits of the controversy, and the appeal is therefore dismissed.

Whole court sitting.