Case 110.—ELECTION CONTEST FOR SHERIFF BY H. H.
RICE AGAINST A. M. NEELY.—Nov. 23.

## Neeley v. Rice.,

Appeal from Owsley Circuit Court.

H. C. FAULKNER, Circuit Judge.

Judgment for Contestant.    Contestee appeals.
Reversed.

1. Elections—Contest—Review of Returns—Grounds—Sufficiency
   —Ky. St. 1903, sec. 1596a, provides that, in cases of a con-
   test for a county office, only the grounds specified by the peti·
   tion of the contestant and the answer of the contestee can be
   considered.  The answer of a contestee alleged that the officers
   of a precinct erroneously canvassed the votes and burned the
   ballots at the instigation of the contestant and others.  His
   testimony did not establish the charges, except that of the
   burning of the ballots, which was done by one of the drunken
   election officers, without any evil intent.  Held, that the
   court properly refused to review the returns of the officers of
   the precinct, though the undisputed testimony showed that
   the election officers were drunk, that many persons were in
   the polling place while the canvass of the vote was being
   made, and that from 60 to 70 per cent. of the ballots were
   voted in public.

2. Contested Elections—Contested Ballots—Duty of Election Offi-
   cers—Mandatory Statute—In a contested election for sheriff,
   where it is shown and agreed that eighty-five contested ballots
   in one precinct were placed in the envelope provided for that
   purpose, and marked "contested ballots," but without any
   certificate of the officers of the election attached thereto, and
   without any of the names of the election officers being written
   across the seal of the envelope, and the judges of the election
   did not in the presence of the clerk and the sheriff place thereon
   the county election seal in hot wax, all of which section 1482,
   Kentucky Statutes, requires should be done, such statute be-
   ing mandatory, none of said contested ballots could be counted
   in determining the result of the election.

3. Subsequent Statutes—Effect—The fact that since the adoption
   of section 1482, a law has been enacted requiring both the con-
   tested and uncontested ballots to be preserved, does not do
   away with the mandatory requirements of the statute for

a certificate showing whether the ballots have or have not been counted, and if counted, what part, and for whom.

4. Intention of Legislature—Avoidance of Oral Evidence—Under the statutes as amended and now in force, it is the intention of the legislature that before the ballots can be used as evidence in a judicial or other investigation, so as to overcome the certificate of the election officers as to the result of the vote, there should be additional evidence of the fact that the ballots so offered were those in contest in the polling room, so that no oral proof would be required to establish their identity which the lawmakers endeavored to prevent by the provisions contained in section 1482.

HAZELRIGG, CHENAULT & HAZELRIGG, J. K. ROBERTS and J. K. GOURLEY for appellant.

POINTS AND AUTHORITIES.

1. In returning the 85 questioned ballots the officers of the election did not comply with the requirements of sec. 1482 of the Ky. Statutes.

2. The undisputed proof is that the election officers were drunk.

3. The fundamental principle applying to our election law is the secret ballot system, and where there is no secret ballot there is no election.

4. It is not necessary in an election contest to set out in the petition specifically all the wrongful acts conplained of, but all such wrongful acts may be taken advantage of under the general plea of fraud. (Kentucky Statutes, sec. 1482; Struss v. Johnson, 100 Ky., p. 319; Anderson v. Likens, 104 Ky., p. 699; Banks v. Sergent, 104 Ky., p. 843; Edwards v. Logan, 24 K. L. R., p. 1106).

E. E. HOGG and JOHN C. EVERSOLE for appellee.

POINTS AND AUTHORITIES CITED.

1. Form should yield to substance in the construction of Statutes. (Toney v. Harris, 85 Ky., p. 473; McCreary on Elections, 4 Ed., secs. 227, 228, 724; Bailey v. Hurst, 113 Ky., p. 699; Hardin v. Cress, 113 Ky., p. 734).

2. The allegations and the evidence must agree. The matters of contest and the facts of counter contest must be particularly set out and none other can be relied upon. (Extra Session Acts General Assembly, 1900; Banks v. Sergent, 104 Ky., p. 843; Anderson v. Likens, 104 Ky., p. 699; Bailey v. Hurst, 113 Ky., p. 699).

3. Burning of the ballots by the officers of the election by mistake or through ignorance of the law where the vote has been correctly counted and certified is no ground of contest. (Hardin v. Cress, 113 Ky., p. 734).

OPINION BY JUDGE NUNN—Reversing.

At the regular November election in 1905 the appellant and appellee were opposing candidates for the office of sheriff of Owsley county. The returns of the election, as evidenced by the certificates of the officials of the precincts, showed that appellant received 625 votes, and appellee received 578 votes, thus giving the former a majority of 47 votes on the face of the returns. He was, therefore, awarded the certificate of election by the county canvassing board, and qualified as sheriff, which office he now holds. The appellee, after the certificate of election had been issued to appellant, instituted this action in the Owsley circuit court, alleging that there were 85 contested ballots in "Cow Creek" precinct, which were not counted in the race for sheriff; that they were voted for him, and the canvassing board should have so counted them; and, if counted, they would show he received a majority of the votes cast in the whole county, and was elected sheriff. The appellant filed an answer in which he claimed the 85 votes in question should be counted for him, making his majority 142, instead of 47, as shown on the face of the returns; that in Buffalo precinct he (Neely) received 76 votes, only 35 of which were counted for him by the election officers of that precinct, the appellee being given 91 votes, when, as a matter of fact, he only received 50 votes. The appellant further alleged that the appellee, together with his brother, Bill Rice, and several other parties, induced the officers to burn the ballots cast at Buffalo precinct, and that other wrongs and

frauds were committed by the officers of that precinct; but he did not specify the particular wrongs or frauds complained of. He asked the court to throw out the vote cast at Buffalo precinct, or, on the other hand, that he be given the 76 votes alleged to have been cast for him, instead of the 35 votes returned by the election officers of that precinct. To this answer appellee replied, denying that any frauds or wrongs were committed at Buffalo precinct, or that appellant received 76 votes, or any number, greater than 35, or that he (appellee) received less than 91 votes. The issues were completed, and after the evidence was all in, the court counted 74 of the 85 contested ballots from Cow Creek precinct for the appellee, and adjudged that he was entitled to the office in dispute.

There are only two questions necessary to be considered on this appeal: First, did the court err in refusing to review the returns of the election officers of Buffalo precinct? Second, was it error to receive as evidence, and allow the 85 contested ballots to overcome the certificates of the election officers of Cow Creek precinct?

The undisputed testimony is that the election officers in Buffalo precinct were drunk; that a dozen or more persons were in the polling place while the canvass of the vote was being made; that from 60 to 70 per cent. of the ballots used at that election were voted in public. The evidence discloses deplorable conduct at that voting place, where the most flagrant violations of the law continued throughout the day. The appellant did not allege that the officers were drunk, or that the electors voted openly, or for whom those who voted openly cast their votes. It is true the votes so cast, unless the voters first made oath of their inability by reason of infirmity to cast their votes, were illegal, and if appellant

had alleged and proved that these votes were cast for appellee, then the number so cast for him would have to be deducted from his total vote. But, as said before, this was not alleged or proved; in fact, so far as. this record shows; these votes may have been cast for the appellant. The election law of 1900 (section 1596a, Ky. St. 1903) provides for filing, in case of a contest for a county office, a petition in which the grounds relied upon shall be stated, and none other shall afterwards be relied upon, and the answer of the contestee shall be filed within a specified time, in which he may also set up grounds of contest against the contestant, in which event they must be specifically pointed out, and none thereafter relied upon.

The only grounds especially pointed out in appellant's answer, with reference to Buffalo precinct, were that the officers, in making the count of the votes, only gave him 35 votes, when they should have given him 76 votes, and gave appellee 91 votes, when he was only entitled to 50 votes; and after the count was made all the ballots were destroyed. His testimony failed to establish these charges, except the burning of the ballots, and this was done, according to the testimony, by one of the drunken election officers without any evil intent. See Bailey v. Hurst, 113 Ky. 699, 24 Ky. Law Rep., 504, 68 S. W. 867; Anderson v. Likens, 104 Ky. 699, 20 Ky. Law Rep., 1001, 47 S. W. 867; Banks v. Sergent, 104 Ky. 843, 20 Ky. Law Rep., 1024, 48 S. W. 149.

The second question to be considered is the right of the court to count the 85 contested ballots from Cow Creek precinct. Section 1482, Ky. St. 1903, so far as is pertinent to the subject under discussion, is as follows: "That if there are any ballots cast and counted or left uncounted, concerning the legality or regularity of which there is any doubt or dif-

ference of opinion in the minds of the judges of the
election, said ballots shall be placed in the large
linen envelopes furnished by the county court clerk
for that purpose and sealed up, and across the seal
thereof the officers of the election shall plainly write
their names, and at the point on the seal indicated
for that purpose the judges of the election shall, in
the presence of the clerk and sheriff, place the county
election seal in hot wax, and the same shall be re-
turned to the clerk of the county court with the re-
turns of the election, for such judicial or other in-
vestigation as may be necessary, with a true state-
ment as to whether they have or have not been count-
ed, and if counted, what part and for whom.   The
tally sheet shall be placed in the linen envel-
ope furnished for that purpose and sealed up
separately, and across the seal thereof the judges of
the election shall plainly write their names, and at
the point on the seal indicated for that purpose, the
judges of the election shall, in the presence of the
clerk and the sheriff, place, with wax, as above re-
quired, the county election seal.''

It is agreed that the officers of the election at
Cow Creek precinct did not comply with the pro-
visions of the statue in making their returns as to
the 85 contested ballots.   They were placed in a
large linen envelope, sealed and marked ''contested
ballots,'' but without any certificate of the officers
of the election attached thereto, and without any of
the names of the officers of the election being written
across the seal of the envelope.   It will be observed
that the statute requires a certificate to be attached
to, or placed with, the questioned ballots, with a
true statement as to whether they have or have not
been counted, and, if counted, what part and for
whom.   The statute further requires that the offi-
cers of the election shall plainly write their names

across the seal on the envelope, and that the judges of the election shall, in the presence of the clerk and the sheriff, place thereon the county election seal in hot wax. All of this the election officers failed to do. Notwithstanding this statute, the court counted these ballots, evidently upon the theory that the statute had been changed since the opinions of this court were rendered in Struss v. Johnson, 100 Ky. 319, 18 Ky. Law Rep., 771, 38 S. W., 680; Anderson v. Likens, 104 Ky. 699, 20 Ky. Law Rep., 1001, 47 S. W. 867, and Banks v. Sergeant, 104 Ky. 843, 20 Ky. Law Rep., 1024, 48 S. W. 149. In all of these cases this court held the provisions of the statute, as it then existed with reference to the certificate of the election officers in regard to contested ballots, were mandatory. Counsel for appellee agree that this was correct, but contend that as all the ballots, both the contested and uncontested, are now preserved, there is no longer a necessity for a certificate showing whether the ballots have or have not been counted, and, if counted, what part and for whom. This contention has some semblance of reason, but it must be remembered that this statute was amended and re-enacted by the General Assembly since this court delivered the opinions in the cases referred to, and that body must be presumed to have known of the construction placed upon the statute in question by this court; yet it was re-enacted with this amendment as an additional safeguard: "* * * and across the seal thereof the officers of the election shall plainly write their names, and at the point of the seal indicated for that purpose, the judges of the election shall, in the presence of the clerk and sheriff, place the county election seal in hot wax," etc.

The General Assembly knew of the cases then pending, and those which had been previously de-

cided in this court, where the facts showed that all
manner of schemes had been resorted to in changing
the result of elections after the polls had closed, and
even after the precinct election officers had com-
pleted all that the statutes required of them. With
a knowledge of all this it is certain that the General
Assembly intended that the section, as enacted in
1900, should be regarded as mandatory.

In the case of Struss v. Johnson, 100 Ky., 319,
18 Ky. Law Rep., 771, 38 S. W. 680, this court said:
"To hold that that part of the statute requiring the
sealing up of the doubtful or questioned ballots,
and a statement of the officers of the election as to
whether they have been counted, etc., is directory,
is to sweep away the safeguard which the law places
around the returns of the officers of the election. To
hold it is mandatory in the particular indicated, we
follow the manifest purpose of the law-making
power, which was to prescribe how doubtful or
questioned ballots should be preserved and returned
for 'such judicial or other investigation as may be
necessary.' To render the doubtful or questioned
ballots admissible as evidence in a judicial or other
investigation, we are of the opinion that they must
be sealed and returned with the statement of the
officers of election, as required by the statute."

With this construction of the statute before it,
the General Assembly enacted the amendment re-
ferred to, with the evident intention that, before
the ballots could be used as evidence in a judicial
or other investigation, or, at least, before they were
sufficient to overcome the certificate of the officers
as to the result of the vote, there should be additional
evidence of the fact that the ballots so offered were
those in contest in the polling room. It was the in-
tention of the Legislature that the ballots should be
presented in such a way that no oral proof would

be required to establish their identity. If not presented in this manner, it would be easy for designing persons to substitute an envelope containing other ballots than the ones actually voted. This could not be done, however, if the signatures of all the officers were written across the seal, and the wax placed thereon as required by the statute. To construe this section of the statutes (1482) as directory, instead of mandatory, would mean that the result of elections might depend upon oral testimony, and this the law-makers endeavored to prevent by the provisions contained in that section. The case of Edwards v. Logan, 114 Ky. 312, 70 S. W. 852, 24 Ky. Law Rep., 1106, involved an election held under the present statute, and since all the ballots were required to be preserved, and this court, in the opinion rendered, adhered to the construction of the statute theretofore given. In that case the result turned upon four or five questioned ballots, which were not allowed in evidence because they were not preserved and certified by the election officers as required by the statute.

For these reasons, the judgment of the lower court is reversed, and remanded with directions to dismiss appellee's petition.

Hobson, C. J. (dissenting.)

In construing our present statute governing elections this court has uniformly followed the rule that mistakes of election officers shall not be allowed to disfranchise the voters where the court, from the record as presented, could plainly see the truth. No sound reason can be given why this rule should be applied to the other provisions of the statute and a different rule applied to the section here before us. There is no more reason why the ignorance, mistake, or inadvertence of the election officers under this section should disfranchise the voters of a precinct

Neeley v. Rice.

or deprive a man of the office to which he has been elected when the real truth is apparent than there is that the same ignorance, mistake, or inadvertence should have this effect under the other provisions of the statute. There are now cases before us in which half of the ballots at a precinct were not counted by the election officers for a supposed defect which had no substance in it as often held by this court. The refusal to count these ballots disfranchised half of the voters of the precinct, and it changed the result of the election. The ballots were put in an envelope, and were sealed up as directed by the statute. Every requirement of the statute was complied with except there was no certificate on the envelope as to whether the ballots had been counted or not, and, if counted, for whom. There has been a recount of all the ballots in the precinct, and yet it is held that upon this recount of all the ballots, the rejected ballots cannot be considered because there was no certificate on the envelope as required by the statute, although every other requirement of the statute was complied with. The purpose of requiring this certificate was to enable the county commissioners to know how to count the ballots when they examined them, because they do not examine the ballots in the box, and without this certificate they cannot intelligently proceed with the count of the disputed ballots. But, when all the ballots are recounted by this court this certificate is of no value because the court must count all the ballots, and it is entirely immaterial how the election officers counted a particular ballot. In the case referred to the ballots in the box and the ballots in the envelope both bear upon their face undisputed evidence of their integrity. There is no question that the court has before it the ballots as the voters cast them, and, yet, under the rule declared in this case the court is powerless in such a case to declare a

correct result, simply because the election officers
failed to put upon the envelope the certificate men-
tioned.    The harsh rule now declared by the court
has never been declared in any case heretofore, and
is entirely out of keeping with the statute itself,
the purpose of which in requiring the ballots to be
preserved was that the ballots when preserved
should be the best evidence of how the vote was cast,
where their integrity is established.    The certificate
referred to could only be of service before the county
commissioners.    It has no place in the recount of
the ballots, and its absence on a recount of the bal-
lots is wholly immaterial where the other provisions
of the statute designed to secure the integrity of
the ballots and their  proper preservation have been
complied with.    There is some force in requiring the
provisions of the statute looking to the preservation
of the ballots to be complied with.    But what the
law contemplates in order for the ballots to be
counted is that the ballots must be preserved.    After
the ballots are placed in the envelope the envelope is
sealed with wax, and the stamp of the election is
placed upon the sealing wax and this envelope with
the ballots in it is produced and shows on its face
it has not been tampered with, there is no reason
why these ballots should not be counted on a recount
of all the ballots simply because the election officers
have failed to write on the envelope a certificate as
to whether they counted these ballots or not, and
put their names to the certificate.    In my view there
can be no sound distinction between the ballots in the
box and the ballots in the envelope.. In either case
they are to be considered on a recount if their integ-
rity is established, and precisely the same rule should
be applied to the ballots locked up in the box and
those sealed up in the envelope.

For these reasons I dissent from the opinion of
the court.