## Cole, et al. v. Nunnelley, et al.

(Decided October 6, 1910.)

Appeal from Scott Circuit Court.

1. Elections—Local Option Election—Blind Voter—Unable to Make Mark—Must Be Sworn.—Under the election statute, where the voter is ·blind or physically unable ;. to mark his ballot, the provision that he shall be sworn is mandatory, and a ballot marked before the required oath is administered cannot be counted.

2. Same—Mandatory Provision of Statute.—To allow a ballot to be counted which is not cast as provided by the statute, would be to give no effect to the mandatory provision of the Constitution that elections shall be by secret ballot.

3. Elector—Showing Ballot—Intentional Exposure.—Section 1474, Ky. St., providing that the ballot of a voter shall not be shown, and if shown he shall not be allowed to vote, refers to an intentional exposure of the ballot.

4. Election Officers—Returns—Failure to Use Seal of Hot Wax— Proper Indorsement.—The fact that the election officers failed to place the county election seal, in hot wax, on the envelope returned, as provided by Section 1485, Ky. St., will not invalidate their return, where they made the proper indorsement on· the envelope and signed it after it was sealed, across the seal.

B. M. LEE and JAMES BRADLEY for appellants.

JAMES B. FINNELL, JR., W. S. KELLY, EDELEN & DAVIS, for appellees.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

On July 24, 1908, an election was held in Georgetown on the question whether spirituous, vinous and malt liquors should be sold in the city. The returns of the election officers showed that there was a majority of one in favor of the sale; but there were three disputed votes

returned in an envelope, which was opened by the county commissioners, and they counted these three ballots, two against the sale and one for it. They thereupon certified that there were 529 votes for the sale and the same number against it. Thereupon appellants instituted a contest before the board provided for in the statute. The contest board after hearing the evidence decided that there was a majority of two against the sale. The contestants appealed to the circuit court, and there it was held that there was a majority of one against the sale. From this judgment the contestants have appealed to this court.

The proof shows that the election was very orderly and quiet. The officers of election were harmonious throughout, and there was no dispute between them or trouble of any kind. Both sides were properly represented at the election; and the chief controversy on the appeal is as to the legality of certain ballots. Thus, Letcher Thomas, according to the proof for the contestants, after he had stamped his ballot came out of the booth to say that his name was not spelled right with his ballot in his hand not folded up, and according to the proof for the contestees, when he started out of the booth with the ballot in this condition, and before he had gotten out of it, one of the judges told him to go back and fold up his ballot. According to all of the proof he then folded up his ballot in the booth, and handed it to one of the judges, and it was deposited in the box. W. B. Simmons folded his ballot in such a way that the stub could not be torn off. He was sent back into the booth and told to fold it properly. He folded it again and handed it to one of the judges, and while the ballot was in the hands of the judge, and he was readjusting the folding so that the stub could be torn off, the ballot was accidentally opened so that one of the officers saw how he had voted. The same thing, practically, occurred with the ballots of C. E. Hills and Jesse Jackson, and these are the three disputed ballots which were not counted and returned in the envelope above referred to. William Washington, Warren Alexander and William Cruise were infirm persons who were brought to the polling place in a buggy, and the clerk by common consent took the ballots out to them sitting in the buggy, and they there made their stamp upon the ballot, and it was returned by the clerk to the election officers and placed in the ballot box. This was done in consequence of the infirmity of the voters.

Dr. T. H. Daugherty, who was a very old man, and infirm, came down in his buggy and voted in the same way except that he held his ballot in his buggy in such a way that nobody could see how he voted, and folded it up and gave it to the election officer. Bud Whitton was a cripple from spinal trouble. He could not walk, but rode on a tricycle. He had to be placed by others on the tricycle, and had to be taken off it by others. He could crawl on his hands and knees. He came down on his tricycle, the clerk took the ballot out to him and he stamped it and the clerk returned it to the judges. C. S. Williams who was an old minister, not blind, but unable to see well enough to mark his ballot, was allowed to vote on the table without being sworn. George Hays, Ike Sanders, Milton Leech, Robert Timberlake, George Spotts and two negroes whose names the witnesses did not remember, voted in the same way. Some of these men were blind, and others, though not blind, could not see well. Three of them testified that they were sworn. But we think the weight of the evidence is to the effect that none of them were sworn, and they all voted as they did because the officers knew them personally, and no question was made. In addition to these matters W. B. Smarr and Charles Huffman, who voted for the sale, did not live in the city. Zack Willson, Jr., who voted for the sale was under twenty-one years old; and Henry Clay who voted for the sale did not reside in the precinct in which he voted. One ballot found in the box, which was voted against the sale, had the name of the clerk, J. J. Caden, written on the back of it in his handwriting; and another ballot which was voted against the sale, had the stencil mark in the proper place on the ballot and also another stencil mark on the ballot up near the top. Contestants undertook to prove on the trial that Smarr and Zack Willson, Jr., intended to vote for the sale, but in fact by mistake voted against it. But the circuit court properly disregarded this evidence under all the proof.

Section 147 of the Constitution provides that "all elections by the people shall be by secret official ballot, furnished by public authority to the voter at the polls and marked by each voter in private at the polls and then and there deposited." The section also provides that "the first General Assembly held after the adoption of the present constitution shall pass all necessary laws to enforce this provision and shall provide that persons illiterate blind or in any way disabled may have their

ballots marked as herein required." Pursuant thereto, the General Assembly by section 1475 Ky. Stat. provided that any elector who declares on oath that by reason of inability to read the English language, he is unable to mark his ballot, may declare his choice to the clerk, who in the presence of the other officers and the elector shall with his pencil make a dot in the appropriate place for the cross mark to indicate the choice of the elector; that the clerk shall then fold the ballot and deliver it to the elector, and he shall then retire to the booth and mark his ballot in the squares showing dots, or in any other squares he may desire; that in case the elector is blind, or so physically disabled as to be unable to mark his ballot, and shall so declare on oath, the clerk shall be allowed to mark his ballot for him in the presence of the challengers and the other officers of election. Under this statute it has been uniformly held, that the provision that the voter be sworn is mandatory, and that a ballot marked before the requisite oath is taken, cannot be counted. (Major v. Barker, 99 Ky. 305, Banks v. Sergeant, 104 Ky. 843, Combs v. Combs, 30 R. 161, Harrison v. Stroud, 129 Ky. 193.) Neither the Constitution nor the statute contemplates that the ballots shall be taken from the polls elsewhere to the voter and by him there marked. The voter must come to the polls and unless he marks his ballot secretly in the booth, he must be sworn. After he is sworn and it appears that he is illiterate, the clerk may then in the presence of the other officers and challengers mark a dot in the ballot showing him how he may vote his choice, and he must then retire to the booth and stamp his ballot himself, unless it appears from his sworn statement that he is blind or so physically disabled as to be unable to mark his ballot; and in this event the clerk may be allowed to mark his ballot for him in the presence of the other officers and the challengers. To allow a ballot to be counted which is not cast as provided by the statute would be to give no effect to the mandatory provision of the Constitution that elections shall be by secret ballot. It is manifest from the proof in this case that the officers and the voters acted in good faith, and there is much room for the argument that the voter should not be disfranchised simply by the failure of the election officers to do their duty. But on the other hand, the Legislature clearly provided pursuant

to the Constitution, how those who are blind, illiterate, or physically disabled, may vote. We cannot add to the terms, of the statute, and to hold the statute directory would be to entirely destroy it; for then open voting could always be indulged in without affecting the result. While there are hardships in the execution of the rule we have laid down, it may be readily seen that greater wrongs would follow from the other rule.

According to the evidence we find that there were six votes against the sale which should not be counted under the rule, and six votes for the sale that should not be counted, besides the two negroes whose names were unknown to the witnesses; and we so conclude that in this case, contestants have not been prejudiced in this matter; for if all these votes are left out the result will not be more favorable to them.

Section 1474 of the statute provides that if any of the electors shall show his ballot to any other person after it is marked so as to disclose how it is voted, the ballot shall not be deposited in the ballot box, and the elector shall then not be allowed to vote. This evidently refers to an intentional exposure of the ballot, and it does not refer to an exposure of the ballot made by one of the officers of the election in arranging the ballot so as to tear off the stub. The voter should not be disfranchised by the act of another in exposing his ballot, or in looking at the ballot when the voter did not intend it to be seen. The statute contemplates a wilful exposure of the ballot. Under all the evidence, we conclude that neither Simmons, Hill or Jackson exposed their ballots within the meaning of the statute. It is insisted that these ballots cannot be counted now for the reason that they were not returned as provided in section 1485 Ky. St., in that the officers of the election although they did everything else as provided by the statute, failed to place the county election seal in hot wax on the envelope. They made the proper endorsement on the envelope and signed it, after it was sealed, across the seal. The purpose of the statute is to secure the ballots from mutilation and also to have the certificate of the officers as to whether they have been counted or not. Two of these ballots were for the sale, and one against it. We think the statute was substantially complied with, but this is not material to the result of the case, as it would make a difference of only one either way.

The ballot of Thomas is in the same situation as that of Simmons, except that it was placed in the box and counted by the election officers. We see no reason for throwing out this ballot or that marked with the signature of J. J. Caden, or with two stencil marks. It often happens that when the voter folds his ballot, the stencil mark makes an impression on another part of the paper against which it is folded. Caden is unable to say how his signature got on the ballot, says it must have been an accident. Certainly the voter did not put it there, and the most reasonable solution of the matter is that Caden put it there inadvertently. It was held in Houston v. Steele, 17 R. 1149, Graham v. Graham, 24 R. 548, Herndon v. Farmer, 114 Ky. 200, that marks made upon a ballot in good faith were not distinguishing marks. There is nothing to overcome the presumption of good faith in the case of either of these ballots or to warrant the throwing out of the vote. There is proof that A. Watson who voted against the sale did not reside in the city, and there is proof that he was absent only temporarily, but the throwing out of this ballot would have no effect on the result. The votes of Smarr and Charles Huffman cannot be counted, as they did not live in the city. Henry Clay did not live in the precinct in which he voted and Zack Willson was under twenty-one years of age. Deducting these four votes from those voting in favor of the sale, we have a majority against the sale; and on the whole record we concur with the contest board and the circuit court in finding that the majority of the legal votes cast at the election was against the sale of spirituous, vinous and malt liquors.

Judgment affirmed.