## Snowden v. Flanery.

(Decided June 19, 1914.)

### Appeal from Lee Circuit Court.

1. Elections—Contests—Re-Examination of Ballots and Recount.— A recount may be had by the defeated candidate upon his naked allegation of mistake and oversight in the counting and certification of the vote.

2. Elections—Ballots—Indications of Choice by Voter—Irregularities, Errors and Omissions—Distinguishing Marks.—(1) Ballots stamped with a cross mark in the square below the square opposite the candidate's name will be counted for that candidate for whom it was obviously intended to be cast. (2) Where the precinct election clerk by inadvertence fails to sign his name on the back of the ballot, the ballot will not be rejected because thereof. (3) Ballots voted with a lead pencil are not invalidated. (4) Where a ballot has a blur or blot in the circle apparently made by the voter using the butt end of the stencil, the ballot will be counted. (5) Inadvertent tearing of a ballot will not invalidate it where

because of sealing wax adhering to the torn place, it is apparent that this was done in wrapping or unwrapping the ballots. (6) Failure of the precinct election officers to detach the secondary stub will not invalidate a ballot. (7) Pencil marks apparently made by the clerk in aiding an illiterate voter are not distinguishing marks. (8) Ballots voted with more than one stenciled cross mark in the circle under the device under certain circumstances will be counted.

3. Elections—Contest—Re-Examination and Recount of Ballots.— Where all the ballots are recounted by the court upon a contest, then the ballots which were questioned upon the count made by the precinct election officers if otherwise properly preserved, may also be counted, although not certified in such manner as to authorize the county board of election commissioners to count them in canvassing the returns of the election, for when the court recounts all the ballots there is no necessity that the questioned ballots shall be certified so as to show for whom counted, if at all.

HAZELRIGG & HAZELRIGG and SUTTON & HURST for appellant.

O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE HANNAH—Affirming.

At the November election, 1913, Arch Snowden was the Democratic candidate and L. T. Flanery was the Republican candidate for the office of sheriff of Lee County.

The county board of election commissioners, upon a canvass of the returns of the election, awarded to Flanery a certificate of election, his majority on the face of the returns being fifty-five votes.

Snowden thereupon instituted a contest proceeding, alleging that in eight certain precincts of the county the officers of the election, by mistake or oversight, counted and certified for contestee more votes than he in fact received, and counted and certified for contestant less votes than he in fact received, this being the only ground of contest alleged. It was further alleged that the ballot boxes and their contents had been preserved in the manner required by the statute; and contestant asked that the boxes be opened and the ballots in the precincts mentioned be recounted, and the errors therein be corrected.

Contestee answered, traversing the allegations of the petition, and objected to a recount of the ballots, but, by way of counter-contest, asked that in the event the ballot boxes were opened which were asked by contestant to be recounted, then that the boxes from two other pre-

cincts not contested by contestant be also opened and a recount thereof had.

Upon the taking of proof, contestant introduced evidence to establish the integrity of the ballot boxes and their contents. Contestee took the depositions of election officers from each precinct, who testified that there was no mistake or oversight upon their part in the counting and certifying of the vote in their respective precincts.

Upon submission of the cause for trial, contestant introduced oral testimony (which is preserved by bill of exceptions) as to the integrity of the ballot boxes and their contents, and moved the court to open the boxes and recount the ballots. This motion the court sustained.

Upon the recount, it was found that the contestee had a majority of five votes, whereupon judgment was entered declaring contestee entitled to the office, and dismissing the petition. From that judgment, the contestant appeals.

1. It is contended by appellee that the court should have sustained the demurrer to the petition, for the reason that the only ground therein alleged for the recount sought to be had was that the election officers in the several precincts, by mistake or oversight, counted for contestee more and for contestant less votes than each actually received. It is further contended by appellee that the court erred in opening the ballot boxes and in making the recount, for the reason that contestant failed to make out a *prima facie* showing that such recount would result in changing the count as determined by the certificates of the precinct election officers and the county board of election commissioners.

The question is thus squarely presented as to whether a defeated candidate, upon a naked allegation of mistake and oversight upon the part of the precinct election officers in counting and certifying the vote, and without the making of a *prima facie* showing that the result will be thereby changed, may have a recount of the ballots. This question has not heretofore been decided in this State.

It must be conceded at the outset, however, that the making of a *prima facie* showing of probable change in the result of the election as declared in the certificates of the election officers, is a thing practically impossible

where the only complaint is mistake or oversight in counting and certifying the vote.

If the precinct election officers in counting and certifying the vote, all concurring in the result reached, make an error in their work, unintentionally, they are not, of course, conscious of their mistake; hence, it would be impossible to establish by any of them that such mistake had been made.

On the other hand, if such officers intentionally make a false certificate, it would be equally impossible to prove their wrongdoing by them, even if they were permitted to contradict by parol the certificate made by them. See Browning v. Lovitt, 139 Ky., 480, 94 S. W., 661, 29 R., 692.

So, where the only ground of contest is mistake or oversight in the counting and certifying of the votes, the defeated candidate must in a large measure rest his claim upon his naked allegation of such mistake and rely on the ballots for the evidence to sustain same.

An election is the machinery whereby a self-governing people may express their opinions in concrete form upon matters of public concern, and select those to whom shall be entrusted the duty of administering the public affairs of the political body. If the people are to be self-governing, therefore, it is essential that an election shall accurately register the public will, for if the officers chosen are not in point of fact the real choice of the people, then those who have produced that condition are masters, and the people are no longer self-governing. And, if by mistake of the election officers, one has been declared entitled to an office, when in fact such one is not the public choice, then the machinery of the government has failed in a most important particular.

Ours is a government which rests upon the will of the governed; and in such a government, it must be that there shall be no taint of suspicion attached to the machinery by which the will of the people is registered and expressed. And, in order that the people may have a confiding faith in the honesty of their elections, we think it proper that one who asserts that by mistake he has been deprived of an office to which the people have chosen him, and who is willing to bear the expense of the investigation if he fail to make good such assertions, should have full and free access to the evidence of his success or defeat, as the case may be.

It may be said that it is unfair to cast upon the candidate, who by certificates of returns which are presumptively correct, has been declared duly elected, the burden of defending himself against a contest proceeding based upon nothing more than a naked allegation of mistake in the count; but the integrity of the election machinery and the confidence of the people in the honesty of elections are matters of supreme importance, to which the individual must yield some measure of disadvantage and of duty.

Upon a thorough and full consideration of the question, the court has reached the conclusion that a recount may be had upon the naked allegation of mistake in the counting and certifying of the vote; and, in a large measure, we have been aided in reaching this determination by the fact that we believe a most salutary influence will be exercised in favor of the honesty of elections and in the prevention of election frauds by the promulgation of the ruling herein announced.

The trend of the best modern thought is along the lines of establishing beyond cavil the absolute fairness and honesty of the elections whereby is indicated the will of that large percentage of the people of the Commonwealth who do not actively participate in the operation of the election machinery further than the casting of the individual vote, to the end that the people shall have an abiding and confiding faith in the integrity of their elections, respect for the officers chosen at those elections, and show willing obedience to the law as administered by them.

The circuit court properly ordered the recount of the ballots sought by the contestant.

In the Sturgeon precinct, the election officers certified 51 votes for Snowden and 105 for Flanery. A recount of the ballots shows 69 for Snowden and 89 for Flanery, being a gain of 34 votes for the contestant.

There are twenty ballots from this precinct, voted in the circle under the Republican device, upon each of which there is found, in the square opposite Snowden's name, a stenciled cross mark (X) of light impression, though distinct, and of singular regularity and similarity of appearance. Appellee argues that this is an unusual number of crossed-ballots and an unusual mistake for the election officers to make in so small a precinct, and we are impressed with this suggestion. That the record offers nothing to explain this condition, however, may be

accounted for by the fact that contestee offered no testimony on this point. The judgment recites that the large envelope found in the ballot box was properly stamped and sealed, and had no appearance of having been tampered with, and appellee concedes that the election officers are above suspicion. The court is not entirely satisfied with the appearance of these ballots, but in the absence of some competent evidence showing in detail the manner and facilities for counting the ballots by the precinct election officers, and especially in view of the conclusions we have reached upon the whole case, we will not disturb the finding of the circuit court with respect to these ballots.

2. There are twenty-three ballots questioned by the precinct election officers, which appellant contends and the judgment recites were not certified according to the requirements of Kentucky Statutes, section 1482; and these appellant contends the court should not have counted and that they should not be counted here.

It was held in Struss v. Johnson, 100 Ky., 319, 18 R., 771, 38 S. W., 680, and in Anderson v. Likens, 104 Ky., 699, 20 R., 1001, 47 S. W., 867, and in Banks v. Sergent, 104 Ky., 849, 20 R., 1024, 48 S. W., 149, that unless the questioned ballots were certified according to the requirements of the statute, they could not be counted upon a contest. In those cases, however, there was no recount by the court of all the ballots cast at the election, and in addition, those cases were decided when the law in effect required the destruction of the counted or unquestioned ballots at the close of the count made by the precinct election officers, so that unless there was a certificate in the form required by the statute, there was no way of determining whether the questioned ballots had or had not been counted for any one, and if so, for whom.

After the law was changed so as to require the preservation of both the questioned and unquestioned or counted ballots, the court in Neeley v. Rice, 123 Ky., 806, 97 S. W., 737, 29 R., 1142, following Edwards v. Logan, 114 Ky., 312, 24 R., 1106, 70 S. W., 852, continued to hold that the questioned ballots could not be counted unless certified as required by the statute, even though all the ballots were counted by the court upon a contest. Judge Hobson dissented from the opinion in Neeley v. Rice upon the ground that when the court upon a contest recounts all the ballots, then the fact that the questioned ballots are not properly certified is immaterial.

The case of Neeley v. Rice was followed in Duff v. Crawford, 124 Ky., 73, 97 S. W., 1124, 30 R., 323; and in Childress v. Pinson, 100 S. W., 278, 30 R., 767.

Upon a reconsideration of the matter, however, we have reached the determination that when upon a contest the ballot boxes are opened and a recount is had by the court, then the questioned ballots, although they may not be certified in such a manner as to authorize the convassing board to consider them, if they are otherwise properly preserved, they may be counted by the court; for in that event there is no necessity for a certificate showing whether, and if so how, the questioned ballots were counted by the precinct election officers.

As was said in the dissenting opinion in Neeley v. Rice, *supra*:

"The purpose of requiring this certificate was to enable the county board of election commissioners to know how to count the ballots when they examined them, because they do not examine the (unquestioned) ballots in the boxes; and without this certificate, they cannot intelligently proceed with the count of the disputed ballots. But, when all the ballots are recounted by this court, this certificate is of no value, because the court must count all the ballots, and it is entirely immaterial how the election officers counted a particular ballot. * * * After the ballots are placed in the envelope (for questioned ballots) and the envelope is sealed with wax, and this envelope with the ballots in it is produced and shows on its face that it has not been tampered with, there is no reason why these ballots should not be counted on a recount of all the ballots simply because the election officers have failed to write on the envelope a certificate as to whether they counted these ballots or not, and put their names to the certificate."

We think this is the proper rule, for otherwise, by the raising of supposed defects having no merit, large numbers of ballots could be placed with the questioned ballots, and the voters disfranchised by the failure of the election officers to make the required certificate. This is contrary to the policy of this court which has always been not to permit mistakes of election officers to disfranchise the voters where the truth was apparent. See Orr v. Kevill, *supra.*

3. For the convenience of the court, the parties have by stipulation, filed in this court, agreed that there are 1821 votes about which there is no question; and that

of these, Snowden is entitled to 904, and Flanery to 917 votes. This leaves only forty-three ballots to be passed upon by the court; and we think the various objections to these ballots have practically all been passed upon in former opinions of this court. Twenty-three of these are "questioned" ballots; that is, they were questioned upon the count made by the precinct election officers. The remaining twenty are ballots to which objection was made by the attorneys upon the recount had in the circuit court.

4. Of these forty-three, there are ten upon which the voter stamped his cross (X) with the stencil in the square below the square opposite the candidate's name. Of these, we count six for Snowden and four for Flanery. (On one of these the election clerk failed to sign his name on the back thereof.) Bates v. Crumbaugh, 24 R., 1205, 71 S. W., 75.

5. There are three ballots upon which the precinct election clerk failed to sign his name on the reverse side of the ballot. Of these we count two for Snowden and one for Flanery. Orr v. Kevill, 124 Ky., 720, 100 S. W., 314, 30 R., 946.

6. There is one ballot voted in the circle under the Democratic device, and which has the name of L. T. Flanery written in pencil in the blank under the title "For Sheriff" in the Progressive party column, but which has no stenciled cross (X) opposite the name, nor under the Progressive party device. This we count for Snowden. Edwards v. Loy, 113 Ky., 746, 68 S. W., 1091, 24 R., 545.

7. There are two ballots voted entirely with cross marks made with a pencil, in the squares opposite the names of the candidate voted for, and one by penciled cross mark (X) in the circle under the Republican device. These we count for Flanery. Houston v. Steele, 98 Ky., 596, 34 S. W., 6, 17 R., 1149; Graham v. Graham, 68 S. W., 1093, 24 R., 548.

8. There is one ballot which has a cross mark (X) made with a pencil, opposite the word "Sheriff" immediately above Snowden's name. This we count for Snowden. Kentucky Statutes, section 1471, provides: "No ballot shall be rejected for any technical error which does not make it impossible to determine the voter's choice."

9. There is one ballot, voted in the circle under the Democratic device, and having a stenciled cross mark (X) in the square opposite the blank line in the Progres-

sive column immediately below the words "For Sheriff."
This we count for Snowden. A similarly-marked ballot
voted under the Republican device, we count for Flanery.

10. There is one ballot which has a stenciled cross
mark (X) at the top of the ballot, between and above the
Republican and Progressive devices, and a stenciled
cross mark in the circle under the Democratic device.
This we count for Snowden. Cole v. Nunnelly, 140 Ky.,
138, 130 S. W., 972.

11. There is one ballot upon which there is a blur
or blot in the circle under the Democratic device, which
has the appearance of having been made by the butt of
the stencil. This we count for Snowden. Bates v. Crum-
baugh, *supra;* Houston v. Steele, *supra.*

12. There is one ballot voted in the circle under the
Republican device, with the Democratic emblem torn off
of the ballot. As this seems to have been done inadver-
tently, we count this ballot for Flanery. Bates v. Crum-
baugh, *supra.*

13. There is one ballot voted in the square opposite
the name of both Snowden and Flanery. This we count
for neither.

14. There were two other ballots with secondary
stubs attached. One has a blot in the circle under the
Democratic device, and was apparently voted by using
the butt of the stencil. This we count for Snowden.
The other was voted in the circle under the Republican
device, and also had a stenciled cross mark (X) in the
square in the Progressive column opposite the lower
blank line under the words "For Sheriff." This we
count for Flanery.

15. There was one ballot which had an irregular "V-
shaped" piece torn out of the bottom of the ballot.
There is a small quantity of sealing-wax adhering to the
tear, and it is evident that this was done either in
wrapping or unwrapping the ballots. This ballot was
voted in the circle under the Republican device; and we
count it for Flanery. Another ballot has a similarly-
shaped piece torn out of the side thereof, the name of
Snowden, the contestant, having been printed on the
piece which is missing. The wax seal is still adhering
to this ballot at this torn place. It was voted in the
square opposite Snowden's name; and we count it for
him.

16. There was one ballot voted under the Democratic
device and having a cross mark (X) in the square oppo-

site the first blank line in the Progressive column below the words "For Sheriff," and a cross mark in the square opposite the blank line just below Flanery's name in the Republican column. This we count for Flanery. Ky. Stat., 1471.

17. There was one ballot voted in the circle under the Progressive device and in the square opposite Flanery's name. This we count for Flanery. There are three other ballots, the ground of objection to which is not apparent to us. Of these, two are voted for Flanery and one for Snowden. They are so counted by us.

18. There was one ballot voted in the circle under the Democratic device and having a pencil cross mark (X) just to the right of the circle, probably made by the clerk in marking the ballot for an illiterate voter. This we count for Snowden. Houston v. Steele, *supra.*

19. There are six ballots, each of which has two stenciled cross marks (X) in the circle under the device, five being voted under the Democratic device and one under the Republican device; the latter, however, has one stenciled cross mark and one made with a pencil, probably by the election clerk. Of the five first mentioned, in two instances the stencil marks are side by side, on two of the ballots one stencil mark is placed directly over the other, being in one case at the extreme top and bottom of the circle, and in the other very close together. On the other ballot, one cross mark is in the middle of the circle and one in the upper right-hand part of the circle.

There are also four ballots, each having three stenciled cross marks in the circle under the Democratic device; on one, the marks are side by side; on the other, immediately over each other; while on the other two ballots, the marks are irregularly arranged. We are not entirely satisfied with these ballots, but have decided to count them, nine for Snowden and one for Flanery. See Houston v. Steele, *supra.*

In the count as made by this court, it will be seen that of the forty-three ballots in question, Snowden received 26 and Flanery 16, one ballot being counted for neither. These 26 votes added to the 904 conceded to Snowden by the stipulation, make 930 votes received by appellant in the election, while the 16 votes counted for Flanery, added to the 917 conceded to him by the stipulation, make 933 votes for appellee, being a majority of three votes in favor of appellee Flanery.

It will be observed from the description given herein of the manner in which the forty-three ballots passed upon by us were marked, that quite a number of them were marked in ways which might be considered as constituting distinguishing marks. We have counted them all, however, believing that the distribution of the ballots so marked among the several precincts, was such as to render quite remote the probability of their having been so marked as the result of deliberate design, or for the purpose of identification in pursuance to any fraudulent practices or bribery in connection with the conduct of the election.

The judgment of the circuit court declaring appellee, Flanery, elected and entitled to the office in question, is affirmed.