## Graham, et al. v. Treadway, et al.

## Thompson, et al. v. Morrow, et al.

(Decided November 18, 1915.)

## Appeals from McCracken Circuit Court.

1. Elections—Board of Election Commissioners—Ballots.—The board of election commissioners is not authorized to consider or count ballots which have been returned by precinct officers as questioned ballots, unless they are accompanied by a statement in writing of the precinct officers, showing whether the questioned ballots have been counted or not counted, and if counted, what part and for whom.

2. Elections—Contest—Ballots.—In a contested election, ballots returned by the precinct officers as "questioned" ballots may be counted by the court, upon a recount of all the ballots, whether accompanied by the certificate required by Section 1482, Ky. Statutes, if they have been so preserved, that they have not been tampered with.

3. Elections—Mandatory Injunction Against Officers of.—A mandatory injunction is a proper remedy to compel election officers to perform ministerial duties which they have neglected to perform.

J. P. HOBSON & SON, W. A. BERRY, W. V. EATON, S. E. CLAY, S. H. CROSSLAND and J. D. MOCQUOT for appellants.

J. C. SPEIGHT, T. N. HAZELIP, DAVID BROWNING and O'REAR & WILLIAMS for appellees.

OPINION OF THE COURT BY JUDGE HURT.—Affirming.

At the election held in the State of Kentucky and in the various counties of it on the second day of November, 1915, the Republican party had candidates for the various State offices, and in the county of McCracken a candidate for member of the House of Representatives from that county. The Democratic party, likewise, had candidates for all of the State offices and for a member of the House of Representatives from McCracken county. In the judicial district in which McCracken county is situated there was a Democratic candidate for judge of the circuit court, but no Republican candidate for that office, but there was an independent candidate for the office of circuit judge. The names of all the Democratic candidates were placed upon the ballot under the Democratic device, and all of the Republican candidates were placed under the Republican device, but the name of David Browning, the independent candidate for circuit judge in the county of McCracken, was placed on the ballot under a device of his own. His device was his own picture, and immediately under it was a circle, such as is under the Republican and Democratic devices, respectively, and at the end of his name was a small square, such as follows the name of each candidate whose name was upon the ballot. In Diegels precinct of McCracken county, when the officers of the election came to count the vote and certify the returns of the election from that precinct, there were found forty ballots which had been cast by voters, who had exercised their suffrage, by stamping with the stencil in the circle under the Republican device or the Democratic device, and, also, in the circle under the device of the independent, David Browning, and eleven ballots which had no stencil mark upon them, and one spoiled ballot, making in all fifty-two ballots, such as are described above. The precinct officers

of the election, being in doubt, as to how they should count the forty ballots which were stamped under either the Democratic or the Republican device, and, also, in the circle under the device of the independent candidate, did not count them at all as having been cast for any candidate, but with the eleven unmarked ballots and the spoiled ballot, placed them in the envelope which is marked "questioned ballots," but, on account of their volume, they could not close or seal the envelope, but placed it in the ballot box along with the other returns and delivered it to the clerk of the county court on the evening of the day of the election. They did not accompany the questioned ballots with any certificate signed by them, stating whether or not the ballots or any of them had been counted, or were not counted, or as to whom, or which of them were counted in the canvass which they had made of the votes cast at the precinct.

On the same day at the Plow Factory precinct in McCracken county, after the polls had been closed, when the precinct officers proceeded to canvass and certify the result of the election at the precinct, they found among other ballots in the ballot box thirty-five ballots, which the voters casting them had exercised their right of suffrage by stamping with the stencil in the circle under the Democratic device or the Republican device and, also, in the circle under the device of the independent candidate. The precinct officers did not count these ballots as being cast for any one, but placed them in the envelope upon which was printed the words "questioned ballots." They then sealed the envelope and at the point of the seal on the envelope each of the officers of the election wrote his name. This envelope was then placed in the ballot box along with the other election returns from that precinct and locked and delivered to the clerk of the county court immediately after the close of the polls on that evening. The precinct officers of the election did not accompany the envelope nor attach to it a statement or certificate signed by them showing whether they had included in the count of the votes cast in the precinct the questioned ballots, or had not included them in that count, or whether they had counted them for any one, or for whom.

The county court clerk and his deputy, when the ballot boxes were delivered to them, caused them to be unlocked and took from the boxes the stub books and the

envelopes containing the questioned ballots and tied them in a bundle with a heavy cord and deposited them in the vault of the clerk's office.

When the board of election commissioners convened on Friday, following the election on Tuesday, it convened in a room which adjoins the vault of the clerk's office in which the election returns were deposited and kept by the clerk. The board of election commissioners proceeded to canvass the returns of the election at that time by calling upon the clerk for the returns of one precinct at a time, and when the returns from that precinct had been canvassed, they were returned to the vault of the clerk's office or were placed in a pile upon the table at which the election commissioners were sitting while engaged in their work. The board of election commissioners refused to consider or to make any count of the questioned ballots returned from the Diegels precinct or the Plow Factory precinct, presumably for the reason, of the absence of a statement signed by the officers as to whether they had or had not counted the questioned ballots, and if they were counted, what part of them had been counted, and for whom they were counted.

The board of election commissioners was about to complete its canvass of the returns of the election in the county, and to adjourn and issue certificates of election, when R. R. Treadway, who was the Republican candidate for member of the House of Representatives from McCracken county, instituted this suit against Z. C. Graham, his Democratic opponent, and the precinct election officers, who had served at Diegels precinct and the Plow Factory precinct, the members of the board of election commissioners, and the clerk of the county court, in which he set up the failure of the precinct election officers to perform their duties with regard to the questioned ballots, by sealing them in envelopes and returning a statement signed by them as to whether they were counted or not counted by them in their canvass of the ballots at their respective precincts, and that the board of election commissioners were refusing to consider or to count these ballots, and that if they should fail to do so, that he would be defeated for the office of member of the Legislature, to which he alleged he had been elected, and sought a mandatory injunction against the precinct officers, requiring them to convene and to secure the questioned ballots for their precincts, respectively,

:and to place them in an envelope and to seal the envel-
·ope as required by law, and to make out a statement, by
which they would certify as to what had been done in
regard to counting the ballots which were returned as
·questioned by them, and would deliver the ballots and
the certificate to the clerk of the county court or the
board of election commissioners, and that the board of
·election commissioners should then be required to con-
vene and to complete the canvass of the returns of the
·election, and to enjoin them from delivering a certificate
·of election to Z. C. Graham, his opponent, until the re-
turns of the election could be completed and canvassed, as
above requested.

The Republican candidates for the State offices, also,
filed their petition against their Democratic opponents
and the precinct officers at Diegels and Plow Factory
precincts, the members of the board of election commis-
sioners, and the clerk of the county court in which they
made substantially the same allegations and sought the
same relief as was sought by Treadway in his action,
except they asked that the election commissioners be en-
joined from certifying the returns from the election as
to anyone until further ordered. The defendants filed
answer in each case, traversing the allegations of the
petition. The suits were consolidated and heard before
a special judge of the McCracken Circuit Court, on the
11th day of November, 1915. A temporary restraining
order was obtained in each case restraining the members
of the board of election commissioners from completing
the canvass of the returns and certifying the result of
the election of the county until further ordered by the
court, and in the case of Treadway v. Graham, from is-
suing a certificate of election to Graham until the further
order of the court. The two cases were consolidated and
heard together.

The court, upon the trial of the motion below for a
mandatory injunction, heard all the evidence offered by
either side, including the testimony of the county court
clerk and his deputy, the members of the board of elec-
tion commissioners, and the precinct officers who held
the election at the precincts from which the questioned
ballots in controversy were returned. At the conclusion
of the trial, it rendered a judgment granting the prayer
of the petition for a mandatory injunction requiring the
precinct election officers at Diegels and Plow Factory

precincts to convene at the office of the county court clerk on the 16th day of November, 1915, and to obtain from the clerk, who was ordered to deliver to them, the uncounted ballots which were returned by them, respectively, and to place the ballots in envelopes, to seal same and to write their names across the seal, and at the point of the seal indicated for that purpose, the judges of the election, in the presence of the clerk and sheriff, to place the county election seal in hot wax, so that it can be plainly read, and to return the same to the county clerk with a true statement as to whether the questioned ballots have or have not been counted, and if counted, what part and for whom, and then the election commissioners were ordered to convene on November 16th, 1915, at 1 o'clock, P. M., and complete the canvass of the election returns for the county and to certify same according to law. The appellants excepted to this judgment and prayed an appeal to this court, and by agreement of parties, the cases were set upon the docket and agreed to be heard and decided at once.

The evidence in the case shows, without question, that the questioned ballots were not counted by the precinct election officers, in the canvass and tabulation made by them of the votes cast at their respective precincts, and the board of election commissioners has refused to canvass them. We will not undertake to detail all the evidence heard bearing upon the question of the preservation of the questioned ballots, but suffice to say, that they have, at all times, since their delivery to the clerk on the evening of the election, been in the custody and under the control of the clerk and election commissioners, so far as the evidence discloses.

It is insisted that the judgment should be reversed, because in an election contest questioned or disputed ballots will not be counted when the precinct election officers have not accompanied them with a statement, which shows whether or not they have been counted in the tabulation made by them in their canvass of the votes, at the precincts, and if counted, for whom they were counted, and for such reason the precinct election officers, after they have returned them to the clerk of the county court, without such statement, ought not thereafter to be compelled to do what by law, it was their duty to do in the first instance. The evil effects of a rule

which would permit election officers, either from igno-
rance or fraud, to fail to do the duties required of them
by law, in the return of ballots about which they may
have or pretend to have doubts as to how they should be
counted, is easily discernible. It is true that it has been
held by this court, in the cases of Straus v. Johnson, 100
Ky., 319; Edwards v. Logan, 114 Ky., 312; Childress v.
Pinson, 30 R., 767, 100 S. W., 278; Anderson v. Likens,
104 Ky., 699; Cole v. Nunnelly, 140 Ky., 138; Banks v.
Sergent, 104 Ky., 849; Neely v. Rice, 123 Ky., 806; Duff
v. Crawford, 124 Ky., 73, and others, that questioned
ballots, unaccompanied by a statement from the precinct
officers of the election, as to whether or not they had
counted them, and if so, for whom, would not be consid-
ered in a suit contesting an election. This rule had its
origin, at a time when the law required the ballots which
were counted to be. at once destroyed by the precinct
officers, and thus, if unaccompanied by a statement as to
whether or not questioned ballots had been counted, it
was impossible to know whether they should be added
to or taken from the number of votes which were cer-
tified, as having been received by a candidate at an elec-
tion. The law, now, however, provides that all of the
ballots shall be preserved and kept, and it now being
possible in a contested election to count all of the bal-
lots, the rule adhered to in the cases, *supra*, has become
unnecessary. In the recent case of Snowden v. Flan-
nery, 159 Ky., 574, the court considering this question,
said:

"Upon a reconsideration of the matter, however, we
have reached the determination that when upon a con-
test, the ballot boxes are opened and a recount is had
by the court, then the questioned ballots, although they
may not be certified in such manner as to authorize the
canvassing board to consider them, if they are otherwise
properly preserved, they may be counted by the court;
for in that event there is no necessity for a certification
showing whether, and if so how, the questioned ballots
were counted by the precinct election officers."

It would now seem that the proper rule in case of a
contest is, that if the questioned ballots have been so
preserved, that they have not been tampered with, they
should be counted, whether accompanied by a statement
of the officers or not, as required by section 1482, Ken-
tucky Statutes. The policy of the law of this State has

always been not to permit mistakes of the election officers to disfranchise the voters or to defeat the will of the people expressed at the ballot box, where the truth of the matter is apparent. There is an absence of all proof or insistence that the ballots have been tampered with or changed since they were delivered to the clerk. From the proof in the case, as it now appears, the ballots have been so preserved that they should be canvassed. If they should be canvassed, then they ought to be put in such condition that the board of election commissioners may lawfully consider and canvass them. This court has frequently held that election commissioners are not authorized to consider or canvass questioned ballots, unless the statement required by section 1482, Ky. Statutes, accompanies them. Potter v. Campbell, 155 Ky., 784; Booe, County Judge, v. Kenner, 105 Ky., 517; Houston v. Steele, 98 Ky., 596.

A proceeding by a mandatory injunction is a proper remedy to require election officers to perform their duties. The duty of the precinct officers to enclose the questioned ballots in an envelope, to seal it up, write their names across the seal; place the county election seal in hot wax at the point of the seal, and return a statement as to whether they have or have not counted them, and if counted, what part and for whom, are ministerial duties, about which they exercise no discretion. They exercised their discretion when they determined not to count the ballots. The election commissioners can be lawfully required to canvass the returns of an election, and to canvass the questioned ballots, when they are accompanied by the proper statement. As to how they shall count them, or whether they shall be counted at all, if the purpose of the voter is not expressed upon the ballot, or if it is not intelligible, are matters within the discretion of the election commissioners, and the court will not control their discretion. Potter v. Campbell, 155 Ky., 784; Riddell v. Childers, 156 Ky., 315; Riddell v. Grinstead, 156 Ky., 319; Denny v. Bosworth, 113 Ky., 785; Bennett v. Richards, 83 S. W., 154; Mason v. Byrly, 26 R., 487; Anderson v. Likens, 104 Ky., 699; State v. Gibbs, 13 Fla., 55; 7 American Reports, 233; State v. Pigote, 97 Miss., 599; cases cited in Note, to State, et al. v. Jackson & Prather, 36 L. R. A., page 1091. The court below does not seem by its judgment to have required anything of the election officers, except such duties as

are ministerial, and such duties, as by law are required of them, and which they have failed to perform.

The judgment is, therefore, affirmed.

All the members of the court sitting.